## (April 28, 1972)

■ In the Matter of FRANKLIN P. GAVIN, an Attorney, Respondent. NEW YORK STATE BAR ASSOCIATION, Petitioner.— Petitioner moves to confirm in part and disaffirm in part the report of the Referee to whom the issues in the proceeding were referred. Respondent conversely moves to confirm the findings favorable to him and to disaffirm those which are unfavorable. Respondent was admitted to the Bar by this court on January 18, 1940. He was suspended from practice for four months in 1961 for income tax avoidance. (*Matter of Gavin,* 14 A D 2d 19.) In 1968 he was again suspended for 18 months upon findings that, although he had made complete restitution, he had been guilty of conversion of funds from an estate of which he was executor. (*Matter of Gavin,* 30 A D 2d 121, mot. for lv. to app. den. 23 N Y 2d 641.) In July, 1970, respondent's application for reinstatement was adjourned upon application of petitioner, who was directed to investigate and report on whether respondent had in all respects complied with the terms of the suspension order. After respondent had been examined under oath on five occasions a petition containing five charges of misconduct and a supplemental petition containing 17 charges of misconduct (one of which was subsequently withdrawn) were filed and the present disciplinary proceeding instituted. The 21 charges fall generally into three categories: failure to co-operate with the Committee on Grievances, neglect of clients' interests, and conversion of funds. With respect to failure to

co-operate with the Committee on Grievances, it is alleged that although respondent was given due notice that he would be examined as to the disposition of all cases which were pending at the time of his suspension and as to matters relating to his employment, income, and the receipt and disbursement of any funds arising from the practice of law, respondent refused to provide a complete list of pending cases or to advise the committee as to the particulars of and the disposition of a number of the cases. In denying this charge, respondent contends that he gave full co-operation to the committee with the exception of 3 cases, as to which he conditionally declined to disclose certain information as being violative of the attorney-client privilege, irrelevant, and beyond the scope of the investigation. In refusing to sustain this charge the Referee found on the entire record that there was no evidence to warrant a finding of refusal to co-operate. We cannot agree. After being adequately notified by petitioner's counsel as to the nature and scope of his examination, respondent steadfastly avoided, and finally refused to comply with, numerous requests to produce bank and office records or to answer questions directed to them. Similarly, he failed to produce a list of files, which concededly he had prepared, or any documentary evidence to show that he had adequately advised his clients of his suspension from practice or had arranged for substitution of other attorneys. Therefore, even assuming respondent is correct in contending, with respect to a suspended attorney's obligation to notify clients, that at the time of his suspension there was no rule or order in effect in this Department which required notification to be given in any particular manner, he was not thereby relieved of co-operating with petitioner in the examination which was ordered by this court. Not only must a suspended attorney furnish full, honest and forthright co-operation upon making application for reinstatement (cf. *Matter of Tomicki*, 33 A D 2d 270; *Matter of Ushkow*, 34 A D 2d 159, 161; *Matter of Hubscher*, 25 A D 2d 113), but as to those matters of proof which are under his control, he bears the burden of furnishing satisfactory proof that he properly conducted himself and refrained from practicing law. (Cf. Anno: Reinstatement of Attorney, 70 ALR 2d 268, 297; *Matter of Riley*, 277 App. Div. 993; *Matter of Finn*, 256 App. Div. 288.) Indeed, the suspension order in this case specifically placed that burden upon respondent in so many words. Instead, respondent's proof, consisting of his own equivocal testimony and self-serving recapitulations and summaries, is anything but clear and convincing. Similarly, with respect to the 15 charges in the supplemental petition that respondent failed to adequately protect his clients' interests at the time of his suspension, we cannot agree with the Referee that all clients were timely and adequately notified. On the contrary, the reasonable inference from the record is that respondent left the task of notification to others — e.g., his secretary and to newspaper reports of his suspension. Admittedly, many, if not all, of respondent's cases were on a deferred calendar either before or soon after commencement of his suspension, thereby subjecting them to the one-year strike-off rule (CPLR 3404; 22 NYCRR 861.17). Respondent's proof is to the effect that while some clients were notified orally and others in writing, nothing was done after his suspension had begun. Letters of notification were not produced; and stipulations of substitution, where produced, are dated long after the suspension had begun. In sustaining these charges we are mindful that the requirement for written notification of clients did not become effective in this department until after respondent's suspension.* We hold, nevertheless, that in the case of an attorney suspended

---

* In the First and Second Departments such notification has been required by court rule. (22 NYCRR 603.14, 692.1–692.7.) In this Department the requirement is now contained in orders of suspension.

for 18 months the duty to protect the interests of clients whose cases are on a deferred calendar obviously requires greater attention than a telephone call from a secretary. Accordingly, we sustain the charges of neglect with respect to the Briskman, Tenczar, Towers and Bain cases. With respect to the charges in the original petition, we confirm the Referee's findings of conversion as to the Hopkins, Platz and Hultgren charges (Nos. 1, 2 and 4) but disagree with his view that in each case there was no intent to defraud or convert. With respect to the remaining charge of conversion involving Mrs. Platz (No. 3), we disaffirm the Referee's findings. The evidence at the very least supports the finding that between July and November, 1968 — after his suspension had been ordered but before it had become effective — respondent had the use of some $4,900 which admittedly belonged to the Platz estate. In rejecting the charge of conversion of the proceeds of the Vagele-Platz transaction, the Referee found that Mrs. Platz, although critically ill, knowingly and understandingly signed a so-called restatement of accounts by which she acknowledged an indebtedness to respondent of $18,270 for legal fees (for which respondent had never sent a bill) and loans spanning a period of some 11 years. The finding that respondent acquired title to this much of the proceeds of the real estate closing prior to the unwitnessed execution of the restatement of accounts has no basis other than respondent's testimony and self-serving exhibits. Weighing all the unusual circumstances surrounding respondent's acquisition of the proceeds from the sale of Mrs. Platz' property, we find that respondent failed to overcome the presumptions of invalidity and unfairness which attach to unwitnessed agreements and transfers in contemplation of death made during the existence of an attorney-client relationship with clients enfeebled by a terminal illness. (Cf. *Matter of Howell,* 215 N. Y. 466; *Matter of Vaulpel,* 266 App. Div. 723; *Matter of Schanzer,* 7 A D 2d 275, affd. 8 N Y 2d 972.) Accordingly, we sustain Charge 3 of the original petition. Finally, with respect to Charge 5 of the original petition we agree with the finding that respondent was grossly remiss in failing to file Mrs. Platz' will for probate until November, 1970 with consequent damage and inconvenience to creditors by reason of delay. In sum, we find the proof sufficient to sustain all charges — lack of co-operation; failure to protect clients' interests; gross neglect of the Platz estate; and conversion of clients' trust funds. In defense of the lack of co-operation charge, respondent contends that he was prevented from making certain disclosures and from producing his records under penalty of violating the attorney-client privilege. His refusal, however, was without justification. The rules governing the privilege are well-settled, and an attorney who asserts the privilege has the burden of establishing that all the requisites for the privilege are present. (5 Weinstein-Korn-Miller, N. Y. Civ. Prac., pars. 4503.02–4503.22; *Matter of Kaplan,* 8 N Y 2d 214; *People ex rel. Vogelstein* v. *Warden,* 150 Misc. 714.) Respondent made no attempt to meet this burden; consequently, his assertion of the privilege was baseless and therefore furnishes no excuse for his refusal to co-operate. On the contrary, it seems clear that respondent's purpose in invoking the privilege was to conceal more widespread wrongdoing. Indeed, the pattern that emerges from the evidence in this and the prior proceeding (30 A D 2d 121) strongly suggests a course of professional misconduct consisting of the manipulation of escrow funds for respondent's own purposes. (See *Matter of Soba,* 22 A D 2d 789; *Matter of Detsky,* 16 A D 2d 595; *Matter of Petito,* 37 A D 2d 422.) Giving consideration to respondent's behavior in light of the grave professional misconduct of which he was previously found guilty, we conclude that he has demonstrated a total lack of appreciation of his professional responsibilities,

is unfit to continue as a member of the Bar and should be disbarred. Application for reinstatement denied; petitioner's motion granted, respondent's motion denied, and respondent disbarred. Herlihy, P. J., Greenblott, Sweeney, Simons and Reynolds, JJ., concur.