OPINION OF THE COURT
Jasen, J.
This case involves an ongoing Grand Jury investigation of prostitution in Onondaga County. During the course of this investigation, several women testified before the Grand Jury concerning their involvement in prostitution between 1975 and the present. Petitioners Richard D. Priest and George M. Raus are attorneys who had represented some of these witnesses on various occasions during this time period. The Grand Jury seeks to obtain information regarding the nature of the fee arrangements between petitioners, their former clients and any third party who may have retained them to appear for the prostitutes. The issue on this appeal is whether petitioners properly refused to answer the questions posed by the Grand Jury upon the ground that such questions seek , to inquire into matters protected by the attorney-client privilege.
On January 18, 1980, petitioners were served with Grand Jury subpoenas duces tecum which required them to provide the Grand Jury with "any and all records of amounts billed and payments made for services rendered to [various prior clients] including fee arrangements and retainer agreements from January 1975 to present.” On January 22, 1980, Onon *66 daga County Court issued an order to show cause why such subpoenas should not be declared void and ordered a hearing. At the hearing, petitioners contended that the fee arrangements between petitioners and their former clients were privileged and that they should not be compelled to disclose such information. The court, however, refused to quash the subpoenas and ordered petitioners to appear before the Grand Jury.
On January 28, 1980, petitioners testified before the Grand Jury that although they had represented certain named individuals, they kept no written records of fees charged or payments made on behalf of these clients. They further testified that they had no set fee which they required for an appearance and that when they were paid at all they were usually paid in cash. Petitioners were then asked whether any third party had ever made payments on behalf of the named clients. Raus testified that a third party might possibly have made such payments, but he refused to disclose the identity of any such party. Priest refused to discuss the subject of third-party payments altogether.
Faced with petitioners’ refusal to testify further, the Grand Jury formulated several specific questions regarding third-party payments and requested that the Onondaga County Court order petitioners to appear and respond to the inquiry. By order dated February 5, 1980, the court required petitioners to appear before the Grand Jury and to answer the following questions:
"1. What written or oral agreement [was made] regarding fees existing between Mr. Priest and Mr. Raus and the named clients or between Mr. Priest or Mr. Raus and any third party on behalf of the named clients, and who were the third parties.
”2. Were payments for legal services on behalf of the named clients made by any third parties or by the clients themselves which are not identified in any records of Mr. Priest or Mr. Raus, [and] who were the third parties.”
Thereafter, the court issued judicial subpoenas to effectuate its order.
On February 11, 1980, petitioners moved to quash these judicial subpoenas, arguing that the testimony sought to he adduced was protected by the attorney-client privilege and that the constitutional rights of the third-party payor would be infringed if petitioners were required to respond. Oral *67 argument was heard on petitioners’ application on February 15, 1980; and on February 26, 1980, County Court quashed its own subpoenas.
On appeal, the Appellate Division unanimously reversed the County Court’s order and denied petitioners’ motion. The court found that there was insufficient evidence in the record to support petitioners’ claim that an attorney-client relationship existed between themselves and the unnamed third party which they sought to protect and noted that even if such a relationship had been demonstrated, the payment of legal fees on behalf of another is not a confidential communication within the scope of the attorney-client privilege. There should be an affirmance.
This case presents a unique factual pattern not heretofore examined by this court. At first blush, the questions posed by the Grand Jury appear to be an inquiry solely into the fee arrangements between attorneys Priest and Raus and various clients accused of prostitution-related offenses. Normally, the question whether the attorney-client privilge should prevent disclosure of such fee arrangements, including payments, if any, made by a third party, would entail an examination of the scope of the privilege as it applies to the attorneys and the parties they represented. In this case, however, petitioners allege that the third-party benefactor of the criminal defendants which they represented was also their client. Thus, the case actually presents three distinct questions, to wit: (1) whether the fee arrangements may be shielded from disclosure on the strength of the privilege surrounding the attorney-client relationship between petitioners and the women they represented; (2) whether such disclosure is barred by the privilege which surrounds the attorney-client relationship arising out of any prior representation of the third party; and (3) whether a separate attorney-client relationship was created between the attorneys and their clients’ benefactor upon the payment of legal fees which is itself deserving of the protection of the attorney-client privilege. Although the factual situation presenting these questions is novel, we believe that each may be answered by applying the analysis traditionally used to test the scope of the privilege.
The attorney-client privilege is, in this State, a creature of statute. (CPLR 4503, subd [a].)[1] It exists to ensure that one *68 seeking legal advice will be able to confide fully and freely in his attorney, secure in the knowledge that his confidences will not later be exposed to public view to his embarrassment or legal detriment. (See, e.g., Matter of Jacqueline F., 47 NY2d 215, 218; Hurlburt v Hurlburt, 128 NY 420, 424; see, also, 8 Wigmore, Evidence [McNaughton rev, 1961], § 2291 [hereinafter Wigmore]; Richardson, Evidence [10th ed], § 410.) The privilege, however, is not limitless. It has long been recognized that "the attorney-client privilege constitues an 'obstacle’ to the truth-finding process, the invocation of which should be cautiously observed to ensure that its application is consistent with its purpose.” (Matter of Jacqueline F., 47 NY2d 215, 219, supra; see, also, Matter of Horowitz, 482 F2d 72, 81-82; Matter of Field, 408 F Supp 1169, 1173; 5 Weinstein-Korn-Miller, NY Civ Prac, par 4503.19, p 45-148; 8 Wigmore, § 2291, p 554.)
Defining the limits of the privilege is, of course, not an easy task. Although several enlightening general statements of the scope of privilege appear in the cases and the treatises (see, e.g., United States v United Shoe Mach. Corp., 89 F Supp 357, 358-359; United States v Stern, 511 F2d 1364, 1367; 8 Wigmore, § 2292), no clear rule of general application can be simply articulated. Indeed, as we have often observed, " 'much ought to depend on the circumstances of each case’.” (See Matter of Jacqueline F., 47 NY2d 215, 222, supra; and Matter of Kaplan [Blumenfeld], 8 NY2d 214, 219, quoting 8 Wigmore [5th ed], § 2313, p 609.) However, there are some general principles relevant to this case by which our analysis may be guided.
 First, it is beyond dispute that no attorney-client privilege arises unless an attorney-client relationship has been established. Such a relationship arises only when one contacts *69 an attorney in his capacity as such for the purpose of obtaining legal advice or services. (CPLR 4503, subd [a]; see, e.g., People v Belge, 59 AD2d 307, 309; United States v United Shoe Mach. Corp., 89 F Supp 357, 358-359, supra; 8 Wigmore, § 2292.) Second, not all communications to an attorney are privileged. In order to make a valid claim of privilege, it must be shown that the information sought to be protected from disclosure was a "confidential communication” made to the attorney for the purpose of obtaining legal advice or services. (Matter of Jacqueline F., 47 NY2d 215, 219, supra; People ex rel. Vogelstein v Warden of County Jail of County of N. Y., 150 Misc 714, 717-718; 8 Wigmore, § 2292.) Third, the burden of proving each element of the privilege rests upon the party asserting it. (Matter of Gavin, 39 AD2d 626, 628; Matter of Grand Jury Empanelled Feb. 14, 1978, 603 F2d 469, 474.) Finally, even where the technical requirements of the privilege are satisfied, it may, nonetheless, yield in a proper case, where strong public policy requires disclosure. (Matter of Jacqueline F., 47 NY2d 215, supra; People ex rel. Vogelstein v Warden of County Jail of County of N. Y., 150 Misc 714, supra.) Applying these pinciples to the case before us, we conclude that no claim of privilege can be made herein.
Although petitioners do not press this point, we note that they may not assert a privilege based upon their representation of the prostitutes who testified before the Grand Jury. The fee arrangements between attorney and client do not ordinarily constitute a confidential communication and, thus, are not privileged in the usual case.[2] (United States v Pape, 144 F2d 778, 782, cert den 323 US 752; see, also, Matter of Michaelson, 511 F2d 882, 888, cert den 421 US 978; Matter of Semel, 411 F2d 195, 197, cert den 396 US 905; Colton v United States, 306 F2d 633, 637-638, cert den 371 US 951.) A communication concerning the fee to be paid has no direct relevance to the legal advice to be given. It is a collateral matter which, unlike communications which relate to the subject matter of the attorney’s professional employment, is not privileged.
Nor does the payment of legal fees by a third person, in and of itself, create an attorney-client relationship between the attorney and his client’s benefactor sufficient to sustain a *70 claim of privilege. (United States v Pape, 144 F2d 778, supra; Matter of Richardson, 31 NJ 391.) While such an arrangement may well be intended to be confidential, it is not, under ordinary circumstances, undertaken for the purpose of obtaining legal advice for the third party and, therefore, no attorney-client relationship arises between the third party and the attorney on the mere payment of attorney fees on behalf of another.[3] The name of the person retaining an attorney for another and the amount of the retainer paid are quite simply not the confidences which the privilege was intended to protect. Rather, "the statements of the client for the purpose of seeking advice from his counsel were the disclosures which were to be kept secret.” (People ex rel. Vogelstein v Warden of County Jail of County of N. Y., 150 Misc 714, 717-718, supra.)
Furthermore, no claim of privilege necessarily arises out of petitioners’ characterization of the third party as a client. As noted earlier, the burden of proving the existence of the privilege is upon the party asserting it. (Matter of Gavin, 39 AD2d 626, 628, supra; 5 Weinstein-Korn-Miller, NY Civ Prac, par 4503.22; see, also, United States v Stern, 511 F2d 1364, 1367, supra; Matter of Bonanno, 344 F2d 830, 833.) The mere statement that the third party was a "client” does not satisfy this burden. (Matter of Bonanno, 344 F2d 830, 833, supra; see, also, Colton v United States, 306 F2d 633, 636-637, supra.) If such an unembellished statement, without more, could seal forever the lips of an attorney, it is difficult to conceive of a situation in which an attorney could be compelled, over his objection, to testify as to any transactions with anyone, for he could too easily refuse to answer on the strength of his own unsupported allegation that such person was a client. Thus, independent facts beyond the attorney’s statements must be shown in order to demonstrate the existence of an underlying attorney-client relationship upon which a claim of privilege could be based. There are no such facts here.
Moreover, even if we were to accept petitioners’ assertion that the third party who paid his clients’ fees had at one time also been a "client”, this fact alone would not be determinative. As we have indicated, no attorney-client relationship *71 arises out of the payment of another’s attorney’s fees. The fortuitous circumstance that the attorney had on occasion represented the payor on other matters is of no consequence, since such representation has no relation to the confidential communication which is claimed to be privileged.
Since we conclude that no attorney-client relationship between petitioners and the third party has been demonstrated, we need not address the further question of whether public policy considerations might require disclosure had such a relationship been shown to exist. (Cf. Matter of Jacqueline F., 47 NY2d 215, supra; People ex rel. Vogelstein v Warden of County Jail of County of N. Y., 150 Misc 714, supra.)
We have examined petitioners’ remaining contentions, including their constitutional claims, and find them to be devoid of merit.
Accordingly, the order of the Appellate Division should be affirmed, with costs.

. "(a) Confidential communication privileged; non-judicial proceedings. Unless the *68 client waives the privilege, an attorney or his employee, or any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney or his employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication, in any action, disciplinary trial or hearing, or administrative action, proceeding or hearing conducted by or on behalf of any state, municipal or local governmental agency or by the legislature or any committee or body thereof. Evidence of any such communication obtained by any such person, and evidence resulting therefrom, shall not be disclosed by any state, municipal or local governmental agency or by the legislature or any committee or body thereof. The relationship of an attorney and client shall exist between a professional service corporation organized under article fifteen of the business corporation law to practice as an attorney and counselor-at-law and the clients to whom it renders legal services.”

. There is no need to address the situation in which the identity of the client or the terms of the retainer agreement were imparted to the attorney as an express pledge of nondisclosure. (Banco Frances e Brasileiro S. A. v Doe, 36 NY2d 592, 599.)

. We note that our finding that no attorney-client relationship sufficient to support a privilege exists in this case should not be read as indicating that no conflict of interest can arise upon third-party payment of legal fees. Indeed, the payment of legal fees may, in a proper case, create a conflict of interest even though it does not form the basis of a claim of privilege.