**Donald J. SOBOL, Plaintiff,**

v.

**E.P. DUTTON, INC., Howard David Deutsch Productions, Inc., Gloria Mosesson, Howard David Deutsch and Arthur Abelman, Defendants.**

**No. 83 Civ. 6529.**

United States District Court, S.D. New York.

Aug. 28, 1986.

Levett, Rockwood & Sanders, P.C., Westport, Conn. (Madeleine F. Grossman, of counsel), Friedman, Wang, Bleiberg & Heimer, New York City (Dorit S. Heimer, of counsel), for plaintiff.

Linden & Deutsch, New York City (Bernard G. Schneider, of counsel), for defendant E.P. Dutton, Inc.

Schlam Stone & Dolan, New York City (Richard H. Dolan, of counsel), for Deutsch defendants.

Stanley P. Danzig, New York City, for defendant Gloria Mosesson.

Wilson, Elser, Edelman & Dicket, New York City, for defendant Arthur Abelman.

EDWARD WEINFELD, District Judge.

Plaintiff Donald Sobol is the author of a series of children's books featuring a boy detective named Encyclopedia Brown. Sobol commenced this diversity action against his publisher, E.P. Dutton, Inc. ("Dutton"), for breach of contract against Dutton and one of its employees, Gloria Mosesson, for breach of fiduciary duty and fraud, against his attorney, Arthur Abelman, for legal malpractice, and against Howard David Deutsch and Howard David Deutsch Productions, Inc. (collectively "Deutsch") for breach of contract, fraud, unfair competition and violations of the Lanham Act. Judge Gagliardi, from whom this case was transferred to this Court, granted Deutsch's motion for summary judgment with respect to Sobol's breach of contract and fraud claims. The only claims remaining against Deutsch are for unfair competition and Lanham Act violations with respect to an agreement, the Corrected Amendment Agreement.

Between 1962 and 1976 Sobol entered into contracts with Thomas Nelson and Sons ("Nelson") for the publication of thirteen books in the Encyclopedia Brown series. The contracts granted Nelson certain exclusive rights and enumerated subsidiary rights to be shared by Sobol and Nelson according to fixed percentages. Nelson was authorized to act as attorney-in-fact for Sobol in the sale of the enumerated subsidiary rights. Ten of the thirteen contracts contained a provision requiring Nel-

son to obtain Sobol's approval for sales of subsidiary rights.

In 1977, Nelson transferred to Esquire Films, Inc. ("Esquire") motion picture and television rights in eleven of the Encyclopedia Brown books published by Nelson. Sobol executed a contemporaneous document in which he warranted that "Nelson has the right to make all agreements and covenants made by it under the [Esquire] Agreement...."

In 1978, Dutton acquired Nelson's rights and obligations under the contracts with Sobol, including the contract with Esquire. Defendant Gloria Mosesson was responsible for negotiating with third parties regarding the subsidiary rights, first for Nelson and then for Dutton.

In March 1979, Deutsch acquired Esquire's rights and obligations under the Esquire Agreement. In December 1979, Deutsch, Mosesson (for Dutton) and Abelman (Sobol's lawyer) negotiated an agreement referred to as the Amendment Agreement. The Amendment Agreement extended the rights available under the Esquire Agreement by including all thirteen books and by giving Deutsch exclusive rights to produce comic books, comic strips, film strips and various merchandising items. Sobol, on advice of his attorney, Abelman, signed an assignment of rights to Deutsch extending the rights granted to Deutsch in the Esquire Agreement and the Amendment Agreement to any future books Sobol might author in the Encyclopedia Brown series.

Thereafter, in a third contract referred to as the Corrected Amendment Agreement, Dutton extended the rights granted to Deutsch to include the exclusive right to publish "coloring books, activity books, pop-up books, how-to books, screenplays & novelizations and adaptations thereof, encyclopedias, dictionaries, magic books, any books employing comic style artwork, and miniature size versions of any books published and new miniature books."

Sobol claims that Dutton breached its contracts with Sobol by assigning subsidiary rights without his approval, that Dutton and Mosesson breached fiduciary duties owed to Sobol and made fraudulent misrepresentations, that Deutsch's activities under the Corrected Amendment Agreement, which Sobol never signed or agreed to, violate the Lanham Act, and that his attorney Abelman committed legal malpractice in his advice regarding the Amendment Agreement.

The parties have engaged in various pretrial discovery procedures and the present matter before the Court relates to motions made by Sobol, arising out of the discovery process.

The Court has reviewed the prolix and discursive affidavits and briefs in support of and in opposition to plaintiff Donald J. Sobol's motion: (1) to impose sanctions upon the defendant Gloria Mosesson on the ground that during pretrial discovery she allegedly produced a fabricated document and suppressed other documents; (2) for an order compelling further discovery of defendants Mosesson and E.P. Dutton, Inc., which they resist on the ground of attorney-client privilege; and (3) for a renewed deposition of the defendants Deutsch, and discovery and production of additional documents by them which they also oppose on the grounds of attorney-client privilege.

## THE MOTION TO IMPOSE SANCTIONS ON DEFENDANT MOSESSON

The sharply contested issue raised by the parties' accusatory and recriminating statements with respect to the so-called fabricated letter dated January 15, 1980 and its reference to the "Corrected Amendment Agreement" obviously should not be decided upon affidavits. This factual dispute is of material significance to several of plaintiff's alleged causes of action and must await determination by the trier of fact upon the trial, where demeanor may be assessed in determining the truth or falsity of the matters at issue.[1] The statements

---

**1.** *Dyer v. MacDougall,* 201 F.2d 265, 268–69 (2d Cir.1952); *Broadcast Music, Inc. v. Havana Ma-* *drid Restaurant Corp.,* 175 F.2d 77 (2d Cir.1949);

of Mosesson's former secretary that there is an outside chance he might have typed the alleged fabricated letter but that he seriously doubted he did, viewed against the express denials of fabrication by Mosesson, the author of the letter, presents an issue of credibility to be decided upon a trial and not upon affidavits.

Plaintiff also moves to impose sanctions upon Mosesson based upon assertions that she suppressed some documents which pertained to communications between Mosesson and Deutsch. While Mosesson produced various documents, she did not produce any that reflected business dealings between her individually and Deutsch. However, she swears that she did produce all documents which were in her possession and that any others not produced either do not exist, were not kept, were lost, or were misplaced in the process of multiple moves from one position to another. She cannot produce, she asserts, that which does not exist or is neither in her possession nor under her control. If compliance is impossible there is no basis for imposing sanctions.[2] Additionally, she asserts that Deutsch, in response to plaintiff's document request, did produce for inspection and copying the very documents which are the subject of this branch of plaintiff's motion. That such documents were produced by Deutsch does not appear to be in dispute.[3]

Plaintiff has offered no proof that Mosesson has in her possession or under her control the documents allegedly suppressed. The motion to impose sanctions upon Mosesson and to require her to pay plaintiff's counsel fees incurred in connection with the motion, is denied in all respects.

## THE MOTION TO COMPEL PRODUCTION OF ADDITIONAL DOCUMENTS BY DUTTON AND MOSESSON

Plaintiff further moves to compel production of various enumerated documents as to which Dutton and Mosesson assert a claim of attorney-client privilege. The classic and approved statement of the privilege is that of Wigmore:[4]

(1) Where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

The burden of proving each element of the privilege rests upon the party asserting it.[5] Under Fed.R.Evid. 501, where state law provides the rule of decision in a civil action, it is the state law of privilege which applies. The parties assume that New York law governs this action and accordingly that CPLR § 4503(a) and the cases decided under it delineate the privilege.[6]

The first eight documents whose discovery plaintiff seeks to compel are correspondence between employees of Nelson,

---

cf. *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam).

**2.** See *United States v. Rylander,* 460 U.S. 752, 757, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983); *Maggio v. Zeitz,* 333 U.S. 56, 75–76, 68 S.Ct. 401, 411, 92 L.Ed. 476 (1948).

**3.** *See* Plaintiff's Affidavit, ¶ 15; Exhibit F.

**4.** 8 Wigmore, Evidence § 2292 (McNaughton rev. 1961) (cited with approval in *United States v. Demauro,* 581 F.2d 50, 55 n. 4 (2d Cir.1978) ); *United States v. Kovel,* 296 F.2d 918, 921 (2d Cir.1961); *Priest v. Hennessy,* 51 N.Y.2d 62, 68–69, 431 N.Y.S.2d 511, 514, 409 N.E.2d 983, 985 (1980).

**5.** *See Priest,* 51 N.Y.2d at 70; 431 N.Y.S.2d at 514, 409 N.E.2d at 985; *Gavin v. New York State Bar Assoc.,* 39 A.D.2d 626, 628, 331 N.Y.S.2d 188, 192 (3d Dept.1972).

**6.** CPLR § 4503(a) provides in pertinent part: Unless the client waives the privilege, an attorney or his employee, or any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney or his employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication, in any action....

from whom Dutton purchased the rights to Sobol's books, and W. Michael Milom, Nelson's outside counsel, in the period from November 1977 to January 1979. It is not disputed that the subject of these documents pertains to legal matters and legal advice to Nelson relative to its contracts with Sobol, the plaintiff herein, and that the communications are protected by the attorney-client privilege. However, as to these documents, the privilege does not exist in favor of Dutton. It exists in favor of Nelson, the client. Milom was counsel to Nelson, and not to Dutton. The privilege is that of the client, not that of third parties.[7] Because Dutton was a third party, it may not assert the privilege.

In an attempt to avoid this determination, Dutton argues that it was the "successor in interest to Nelson." Dutton asserts that in the course of the transfer of the ownership of Nelson's rights in the Sobol works to Dutton, Nelson handed over to Dutton its files, including correspondence between Nelson and its attorneys. Accordingly, on the authority of the decision of the Supreme Court in *Commodity Futures Trading Commission v. Weintraub*,[8] Dutton contends that "the right to assert (or waive) the privilege passes with the transferred assets." *Weintraub* does not stand for any such proposition. In *Weintraub*, the Supreme Court elaborated upon the control-group principle announced in *Upjohn Co. v. United States*,[9] which concerns who may assert or waive the privilege of a corporate client. *Weintraub* applied that principle in determining who is vested with the power to waive the attorney-client privilege of a debtor in reorganization under Chapter 11. The Court held that the trustee in bankruptcy performs the control functions associated with the management of a solvent corporation and under the Bankruptcy Act has the power to assert or

waive the corporate privilege with respect to prebankruptcy communications made by former officers and directors.[10] Dutton's argument is factually flawed since it was not the successor-in-interest of Nelson nor was it the "new management" of Nelson when Nelson transferred to Sobol its rights to the Sobol works.

The other cases cited by Dutton on this point, like *Weintraub*, assessed who may exercise the privilege accorded the corporate client when control of the corporate client changes hands. Neither *Weintraub* nor any other case cited by Dutton holds that the attorney-client privilege is an incident of the sale of a portion of tangible assets of a corporation and is transferred upon sale. Dutton did not purchase all of Nelson, but only a portion of its assets. Dutton and Nelson engaged in an ordinary commercial transaction in which Dutton purchased contractual rights previously assigned to Nelson by the plaintiff. This transaction had nothing to do with the attorney-client relationship between Nelson and its counsel. Thus, as to documents (a)(1) to (a)(8) listed in ¶ 20 of the Grossman Affidavit, the claim of privilege is denied and discovery is ordered.

## DISCOVERY OF CORRESPONDENCE BETWEEN DUTTON AND ITS OUTSIDE COUNSEL

■ Plaintiff seeks to compel disclosure of an uncertain number of documents containing correspondence between Dutton and its outside counsel, Greenbaum, Wolff & Ernst, regarding Dutton's prospective purchase from Nelson of the rights and obligations to be acquired by Nelson under various contracts with Sobol. Even prior to the institution of this action, Nelson and Sobol were in dispute as to various matters under the contracts between them. The Greenbaum, Wolff & Ernst legal advice

7. *Cf. Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 1991, 85 L.Ed.2d 372 (1985); *People v. Shapiro*, 308 N.Y. 453, 458, 126 N.E.2d 559, 562 (1955).

8. 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985).

9. 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

10. *Cf. In re OPM Leasing Services, Inc.*, 13 B.R. 64 (S.D.N.Y.1981), aff'd, 670 F.2d 383 (2d Cir. 1982).

necessarily extended to and considered the disputed matters. Plaintiff argues, with respect to these Greenbaum, Wolff & Ernst documents, that there can be no assertion of the privilege for two reasons: first, because Dutton acted as the plaintiff's fiduciary, and a fiduciary may not assert the attorney-client privilege against a beneficiary; and second, because the documents authorized by Mosesson during her employment with Dutton were turned over to Mosesson's counsel and subsequently disclosed to plaintiff's counsel, thus implicitly waiving the privilege. Neither of these arguments is valid. Under plaintiff's concept, each successor to the rights Nelson asserts it acquired from Sobol became the fiduciary of Sobol. This argument, however, is based on the mistaken assumption that Nelson was Sobol's fiduciary in the first place. Under New York law, the relationship between author and publisher is not a fiduciary relationship; it is a commercial relationship between contracting parties.[11] Dutton, as Nelson's successor, did not become Sobol's fiduciary and is not estopped on this ground from asserting the privilege.

■ Plaintiff's contention that disclosure of documents by Mosesson's counsel waived Dutton's privilege in those documents is also without substance. Dutton's disclosure of documents to Mosesson, a former employee, for the purpose of preparing a common defense was not waiver, "and subsequent dissemination by [Mosesson] or [her] attorney without authorization by the [defendant] is no waiver either."[12] This branch of plaintiff's motion is denied.

### DISCOVERY OF HANDWRITTEN NOTES OF MOSESSON ON VARIOUS DOCUMENTS

■ Plaintiff's Affidavit ¶ 20(d) refers to "A series of handwritten notes inserted by Mosesson on various documents [concern-

ing the contract between Nelson and Sobol].... Mosesson is unable to state when the notes were created or to which attorney they were addressed." Defendants in their papers do not dispute this statement. Since the author of the handwritten notes does not state whether they were confidential communications made to Dutton's counsel during her employment at Dutton, there is no evidence that they were part of a privileged communication. Defendants have thus failed to carry the burden of showing this element of the privilege, and accordingly the documents partially described in ¶ 20 of the Grossman Affidavit should be produced.

### MOTION TO COMPEL DEUTSCH TO PRODUCE WARNER BROTHERS DOCUMENTS

■ Plaintiff seeks to compel the Deutsch defendants to produce documents reflecting Deutsch's negotiations with Warner Brothers with respect to a movie which discuss dealings between Deutsch and Warner after January 31, 1980, long after the Amendment Agreement and the Corrected Amendment Agreement had been executed.

Deutsch has produced all documents in its possession relating to the negotiations up to January 31, 1980. The only claims by plaintiff against Deutsch remaining in the case are plaintiff's unfair competition and Lanham Act claims with respect to Deutsch's exercise of its rights under the Corrected Amendment Agreement. As Judge Gagliardi has noted, the issues revolve around the question of whether Dutton had authority to enter into the Corrected Amendment Agreement for Sobol. Deutsch's negotiations with others after the Agreement was executed are not relevant, even under the liberal interpretation

---

**11.** *See Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing Co.,* 33 A.D.2d 766, 306 N.Y.S.2d 599 (per curiam), *aff'd,* 30 N.Y.2d 34, 330 N.Y.S.2d 329, 281 N.E.2d 142, *cert. denied,* 409 U.S. 875, 93 S.Ct. 125, 34 L.Ed.2d 128 (1972).

**12.** *Leucadia, Inc. v. Reliance Ins. Co.,* 101 F.R.D. 674, 680 (S.D.N.Y.1983) (Leval, J.) (applying New York law).

of "relevant" under Rule 26. This branch of plaintiff's motion also is denied.

## CONCLUSION

The motions to impose sanctions upon Mosesson, to compel production of correspondence between Dutton and its outside counsel, and to compel Deutsch to produce documents reflecting its negotiations with Warner Brothers are denied. The motions to compel the production of documents (a)(1) to (a)(8) listed in paragraph 20 of the Grossman Affidavit, as well as Mosesson's handwritten notes on documents described in that paragraph, are granted.

So ordered.