OPINION OF THE COURT
John A.K. Bradley, J.
Martin Stolar, counsel to the defendant in the case of People v Jian Jun Li, moves to quash a trial subpoena served upon *176 him by the People, seeking to obtain records which will reveal Mr. Stolar’s fee arrangement with the defendant, in particular the source of the fee payment to Mr. Stolar.
The People claim that the defense has advised them that an attorney who initially appeared with Mr. Stolar on the defendant’s behalf after his extradition, Mr. Handal, will be the key witness for the defense at trial. The People claim to have been informed that Mr. Stolar’s bills were paid by a Mr. Choong, a California businessman who introduced Handal to the defendant. The People have presented no evidence as to their claim of Choong’s payment, and do not know if Choong will testify. The People claim that they need the fee information in order to impeach Choong and/or Handal.
The People claim that they have agreed with Mr. Stolar that they will not call him as a witness, and need only to call an employee of Stolar to authenticate the documents.* They also claim that obtaining this information from the defendant’s lawyer is the least intrusive way to get the information. The only other method, they allege, is to subpoena the bank, which will need to reveal all of Mr. Stolar’s banking information in order to produce the relevant material.
The movant has responded that if the documents have to be authenticated, Mr. Stolar will indeed have to be a witness at the trial of his client — that he has no other employees who can authenticate the fee information. The moving papers point out that the People have made no effort to obtain this information directly from Handal or Choong. The defense asserts that they have no intention to call Choong at the trial as a defense witness (but will not commit not to do so — as is their right), and may not call Handal. They point out that the People have nothing more than speculation as to their suspicion of the fee arrangement, and that in any event this is merely collateral impeachment material. Most significantly, they argue that the subpoena is on the one hand a fishing expedition (the People do concede that they do not anticipate that anything they obtain from Mr. Stolar will provide direct impeachment material but that rather they will then have to use other discovery and subpoena techniques directed to others to trace a possible *177 chain of transactions back to Choong), and on the other intrudes on the relationship between lawyer and client, creating the spectacle of making a lawyer a witness for the People against his client, impinging on the defendant’s Sixth Amendment rights.
Discussion
The parties do not dispute that the attorney-client privilege is not implicated by a subpoena directed to legal fees, and that a lawyer’s fee arrangement is not protected by the attorney-client privilege. (Matter of Grand Jury Subpoena [Stewart— Special Prosecutor of State of N.Y.], 156 AD2d 294 [1989], appeal withdrawn 76 NY2d 948, [1990], cross appeal dismissed 75 NY2d 1005 [1990]; Matter of Priest v Hennessy, 51 NY2d 62 [1980].)
However, this is not the end of the inquiry. While various federal courts have ruled that the Sixth Amendment may not be implicated by the subpoena by the prosecutor of the defense counsel’s legal fees, the New York courts have not so held. The People cite to a Supreme Court decision in Matter of Grand Jury Subpoena (Stewart) (People’s mem at 4), in which the court allegedly rejected the argument that revealing the fee arrangement could ruin the lawyer’s relationship with his client. However, on appeal, while leaving intact the ruling of the Supreme Court that the People must show good faith, relevancy, and lack of alternative sources, the Appellate Division added its clear admonition that such a subpoena dangerously infringes on the attorney-client relationship, and that when representation is current, the People must demonstrate necessity. The Appellate Division in fact held:
“[the subpoena’s] enforcement should be stayed until appellant’s representations of defendants in this matter are terminated * * * In this way, the inevitable ‘chilling effect’ that the very summoning of appellants before the Grand Jury has on their relationships with their clients * * * will be ameliorated, as it should be absent a showing by the prosecution that the information it seeks must be had from appellants at this time.” (Matter of Grand Jury Subpoena [Stewart], supra at 294.)
It is common sense that a defendant in a criminal case has a sensitive and trusting relationship with his attorney, literally putting his freedom in counsel’s hands. More so even than before the grand jury, compelling such attorney to be a witness *178 for the People in the trial before the very jury faced with ruling on the defendant’s guilt or innocence, severely chills the attorney-client relationship and threatens to disqualify the lawyer (depriving defendant of the counsel of his choice). It is not enough that the People are curious, they must demonstrate some necessity for seeking the information, some basis to believe that it will definitely be probative at trial, and that there is no better alternative to obtain it. (See Matter of Grand Jury Subpoena [Stewart], supra.) Here the People need this evidence at best for impeachment purposes.
While the court is not ruling on the propriety or efficacy of such a subpoena were it to be sought or served, the People have asserted they could obtain the information they seek from the depository bank. In fact, it is much more likely that such institution would have the records sought by the People than that the attorney would have retained copies of checks payable to him which he deposits in the bank. The People argue that if Stolar does not have copies he will comply with the subpoena through nonproduction, but the likelihood that alternatives exist to the subpoena of counsel records is relevant to the determination of necessity. The People could have sought such documents from Choong and Handal as well. Rather they ask this court instead to permit the public spectacle of the defendant’s lawyer being summoned from counsel table at trial to testify against his client. This is precisely the harm with which the Appellate Division was concerned in Matter of Grand Jury Subpoena (Stewart) (supra).
° The People argue that they will not call Stolar. However, if they want to use the subpoenaed information they will need to do so. If, on the other hand, they anticipate that this evidence will be facially neutral and not admissible standing alone, but will lead to speculative discovery and investigation, all for impeachment of a witness who may not testify, the People have not met their burden.
As set forth above, the probative value of the materials sought is tenuous, alternative sources exist, and the People have not demonstrated necessity. Accordingly, the People have not made a sufficient demonstration that they need to have this material produced by counsel to overcome the impact on the attorney-client relationship that such a subpoena will cause.
The defendant’s motion to quash the subpoena is granted.

 The subpoena calls for copies of checks and other forms of payment received by Mr. Stolar in payment of the defendant’s legal bills. Surely such checks would have been deposited and no longer in Mr. Stolar’s possession. More likely they would be in possession of the payor, either Handal or Choong according to the People’s theory, but it seems they have not sought these documents from anyone but defense counsel.