## Brooklyn Tabernacle v Holland & Knight LLP

2024 NY Slip Op 31979(U)

June 6, 2024

Supreme Court, Kings County

Docket Number: Index No. 520533/2020

Judge: Leon Ruchelsman

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS : CIVIL TERM: CCP
----------------------------------------------x
THE BROOKLYN TABERNACLE,

                              Plaintiffs,        Decision and order

          - against -                           Index No. 520533/2020

HOLLAND & KNIGHT LLP, STUART M. SAFT
AND JOSHUA BERENGARTEN,                          June 6, 2024
                              Defendants,
----------------------------------------------x
PRESENT: HON. LEON RUCHELSMAN                    Motion Seq. #9


The defendant has moved pursuant to CPLR §3124 seeking the production of documents and other discovery from the plaintiff. The plaintiff has opposed the motion. Papers were submitted by the parties and arguments were held. After reviewing all the arguments this court now makes the following determination.

The plaintiff is a non-denominational Church located at 17 Smith Street in Kings County. According to the complaint this lawsuit asserts the defendant committed legal malpractice and breached its duty to the plaintiff regarding a series of real estate transactions. Specifically, the Church is the owner of a condominium unit located nearby at 180 Livingston Street in Kings County. The plaintiff sought to develop that property and on December 17, 2014 hired the defendant to provide legal services to help the plaintiff with a "complex transaction" (see, Verified Complaint, ¶7 [NYSCEF Doc. No. 1]). The transaction consisted of a series of steps whereby the plaintiff would transfer the unit to an entity called Thor 180 Livingston LLC, a subsidiary of Thor

Equities Group [hereinafter 'Thor'], the unit would be subdivided into two units and one unit would then be transferred back to the plaintiff. Further, the plaintiff anticipated transferring air and development rights to Thor concerning the Church's main sanctuary. Further, the plaintiff executed a no-conflict waiver allowing the defendant to represent Thor in certain condominium matters as well as the Church. Likewise, Thor also executed a no-conflict waiver. Thus, on March 13, 2015 the defendant prepared a sale purchase agreement whereby the condominium unit was transferred to Thor. The complaint alleges that agreement favored Thor at the expense of the plaintiff. On November 13, 2017 the defendant notified the plaintiff that it was withdrawing its representation of the plaintiff on the grounds it could not represent both sides of a transaction notwithstanding the no-conflict waiver. Further, on July 31, 2018 an agreement, known as the Tri-Party Agreement was entered into between the Church, Thor and a tenant of Thor named Dallas BBQ whereby the Church would be permitted to move HVAC equipment on condition it upgraded the HVAC to benefit Dallas BBQ at its sole cost and expense. That agreement lists a law firm, namely Starr and Associates [hereinafter 'Starr'] as the representative of the Church. The complaint, however, alleges that "MR. Berengarten and HK purported to represent the Church during these negotiations" (see, Verified Complaint, ¶33 [NYSCEF Doc. No. 1]).

2

[*2]

This action alleging legal malpractice and a breach of fiduciary duty was filed. The defendant now seeks communications between the plaintiff and Starr. The defendant asserts they have the right to discover the communications between Starr and the plaintiff and whether such communications can minimize or completely eliminate any malpractice alleged against them. The plaintiff opposes the motion arguing that any communications between Starr and the plaintiff are privileged and are protected by the attorney-client privilege.

## Conclusions of Law

The attorney-client privilege "exists to ensure that one seeking legal advice will be able to confide fully and freely in his attorney, secure in the knowledge that his confidences will not later be exposed to public view to his embarrassment or legal detriment" (Matter of Priest v. Hennessy, 51 NY2d 62 431 NYS2d 511 [1980]). A waiver of the attorney-client privilege may be found when the client places the subject matter of any attorney client communications in issue "or where invasion of the privilege is required to determine the validity of the client's claim or defense and application of the privilege would deprive the adversary of vital information" (see, Kingston Check Cashing Corp., v. Nussbaum Yates Berg Klein & Wolpow, LLP, 218 AD3d 760, 194 AD3d 495 [2d Dept., 2023]). Thus, the attorney-client privilege is waived when a client asserts a malpractice claim

3

[*3]

against its former attorney (Buxton v. Ruden, 12 AD3d 475, 784 NYS2d 619 [2d Dept., 2004]). However, a defendant attorney may not obtain communications from the plaintiff's current counsel (see, Jakobleff v. Cerrato, Sweeney and Cohn, 97 AD3d 834, 468 NYS2d 895 [2d Dept., 1983]). In that case the plaintiff Gloria Jakeboleff sued her original matrimonial attorney for failing to secure certain benefits in her divorce proceeding with her husband. The defendant, former counsel, impleaded the husband as well as the plaintiff's current attorney accusing the current attorney of failing to take certain actions that were beneficial to Gloria and sought discovery from the current attorney. The current attorney objected on the grounds any discovery would contain privileged information between him and Gloria. The court agreed holding that Gloria did not waive any of her communications with her current attorney. Rather, by suing her original attorney she was placing her damages in issue permitting the original attorney to argue Gloria failed to mitigate damages. Alternatively, the original attorney could sue the current attorney for contribution. The court explained that "it simply cannot be said that plaintiff has placed her privileged communications with her present attorney in issue, or that discovery of such communications is required to enable defendants to assert a defense or to prosecute their third-party claim. To conclude otherwise would render the privilege illusory in all

4

[*4]

legal malpractice actions: the former attorney could, merely by virtue of asserting a third-party claim for contribution against the present attorney, effectively invade the privilege in every case. Such a result would surely contravene the purpose of the privilege" (id).

The defendant argues that case does not control the discovery sought here because in that case the defendant prior counsel placed the privileged communications in issue while in this case the plaintiff itself put those communications in issue. The defendant points to Paragraph 62 of the complaint which alleges that "the Church is entitled to damages in the form of the recovery of attorneys' fees and other expenses reasonably incurred in retaining alternate counsel to perform services for which the defendants were retained and paid and/or to cure errors caused by the defendants' negligent conduct" (see, Verified Complaint, 62 [NYSCEF Doc. No. 1]). The defendant insists that "if Other Attorneys were retained to perform the same services for which Defendants were retained, then Other Attorneys' advice bears on the issue of proximate causation" (see, Reply Memorandum, Page 9 [NYSCEF Doc. No. 231]). However, the distinction drawn between situations where the defendant attorney puts the statements in issue and this case where the plaintiff placed the communications in issue is unpersuasive. In all cases the reason the original counsel seeks communications with the

5

[*5]

plaintiff's new counsel is to try and argue that any damage sustained by the plaintiff was really caused by the new counsel. The mere fact a plaintiff mentions the new counsel in the complaint does not alter the motives of the defendant and does not mean the plaintiff himself or herself waived any privilege thereby. Indeed, the plaintiff always retains new counsel and always communicates with such counsel. This remains true regardless of any references, in the complaint, about plaintiff's current counsel. In fact, in Jakobleff v. Cerrato, Sweeney and Cohn (supra) the whole reason a contribution action was commenced was precisely to shift the blame for any damages sustained to the plaintiff's current counsel. The simple truism that plaintiff retains new counsel prompts the request for those communications. The communications are placed in issue because of the litigation itself. Thus, whether any mention of new counsel is referenced in the complaint is entirely irrelevant.

The defendant further insists that there are cases that support the production of communications with new counsel where the original counsel has been sued for malpractice. In IMO Industries Inc., v. Anderson Kill & Olick P.C., 192 Misc2d 605, 746 NYS2d 572 [Supreme Court New York County 2002] an insurance company sued IMO in California alleging that a payment it made to settle a claim should not have been paid and sought recovery. IMO retained Anderson Kill & Olick [hereinafter 'Anderson'] and

6

also another law firm Farella Braun & Martell, LLP [hereinafter 'Farella'] to represent it in California. IMO lost the California action and commenced a malpractice action against Anderson in New York. Anderson sought communications between IMO and Farella. The court held that Anderson was entitled to such communications. The court reasoned that since the California action had ended therefore there was no fear that any such communications produced would harm IMO's ability to communicate with its current counsel. The court analogized this scenario to a medical malpractice action where a patient claims a certain physician committed malpractice and then treated with another physician. Surely, the patient has waived her physician-patient privilege even regarding the second physician. The court explained that "the waiver in this case is clearer still, because IMO claims that Farella and Anderson Kill concurrently represented it in the California Action, the outcome of which is the basis for IMO's alleged harm" (id). Indeed, other cases have reached similar conclusions (see, Goldberg v. Hirschberg, 10 Misc3d 292, 806 NYS2d 333 [Supreme Court New York County 2005], Bolton v. Weil, Gotshal & Manges LLP, 4 Misc3d 1029(A), 798 NYS2d 343 [Supreme Court New York County 2004]).

However, those cases have adopted a definition of the "at-issue" waiver doctrine that is far too broad. According to those cases, any communication between counsel that is relevant is

7

[*7]

thereby waived. "But privileged information may be in some sense _relevant_ in any lawsuit" (In re County of Erie, 546 F3d 222 [2d Cir. 2008]). Therefore, the privilege is only waived "where a party affirmatively places the subject matter of its own privileged communication at issue in litigation, so that invasion of the privilege is required to determine the validity of a claim or defense of the party asserting the privilege, and application of the privilege would deprive the adversary of vital information" (see, Deutsche Bank Trust Company of Americas v. Tri-Links Investment Trust, 43 AD3d 56, 837 NYS2d 15 [1st Dept., 2007]). "Of course, that a privileged communication contains information relevant to issues the parties are litigating does not, without more, place the contents of the privileged communication itself "at issue" in the lawsuit; if that were the case, a privilege would have little effect" (id). Rather, the appropriate test whether a party has placed communications in issue to constitute a waiver is whether the party relied upon the privileged communication as a claim or defense or as an element of a claim or defense (id). Thus, in Stock v. Schnader Harrison Segal & Lewis, 122 AD3d 210, 35 NYS3d 31 [1st Dept., 2016] the court held that communications with prior counsel do not constitute an "in-issue waiver" where the party "never indicated, and expressly deny having, any intention to use the privileged documents to prove any claim or defense in this action, such use

8

[*8]

of privileged materials being the sine qua non of "at issue" waiver" (id, see, also, IDT Corp., v. Morgan Stanley Dean Witter & Company, 107 AD3d 451, 967 NYS2d 51 [1st Dept., 2013]). Further, in Lue v. Finkelstein & Partners, 67 AD3d 1187, 888 NYS2d 290 [3d Dept., 2009] the plaintiff sued his former counsel for failing to preserve claims against one party in bankruptcy. The defendant, former counsel, questioned plaintiff about his successful settlement with another party. The plaintiff refused to answer citing the attorney-client privilege with new counsel. The court sustained the privilege holding that any settlement reached with one party had no bearing whether the prior counsel failed to preserve other claims (see, also, Raphael v. Clune White & Nelson, 146 AD2d 762, 537 NYS2d 246 [2d Dept., 1989]).

Thus, the mere fact that communications exist between the plaintiff and new counsel does not mean those communications have been placed in issue by the commencement of this action. Rather, there must be a demonstration that the plaintiff relied upon those communications and intends to utilize those communications to further its claims against the defendant (see, Orca Bank v. Proteinas Del Pacifico, 179 AD2d 390, 577 NYS2d 841 [1st Dept., 1992]).

In this case the communications between the plaintiff and Starr do not form the basis of any of the malpractice claims at all. The malpractice claims are asserted against the defendant

9

[*9]

and are not enhanced or supported by any communications between plaintiff and Starr. The complaint does seek to be reimbursed for fees paid to Starr due to defendant's alleged malpractice. However, that claim does not amount to a waiver of the privilege. The case of East Ramapo Central School District v. New York Schools Insurance Reciprocal, 150 AD3d 683, 54 NYS3d 413 [2d Dept., 2017] is instructive. In that case the school district was sued on the grounds it siphoned money for private institutions at the expense of the district schools. The insurance company for the district disclaimed arguing no coverage was available for intentional conduct. The district sued the insurance company to compel them to defend and the district was granted summary judgement. The insurance company appealed and the court held the mere fact the district sued the insurance company for indemnification did not mean the district waived its attorney-client privilege. The court explained that "although the School District placed the reasonableness of its attorneys' fees at issue, it did not place at issue any legal advice it received from its attorneys in connection with the underlying action, its attorneys' work product, or their private mental impressions, conclusions, opinions, or legal theories" (id). Rather, "the reasonableness of the attorney's fees can be determined by, inter alia, an examination of the invoices of the School District's attorneys for the work performed in the

10

underlying action, all documents filed in the District Court in the underlying action, and all correspondence exchanged among the parties' counsel in the underlying action" (id). Therefore, the privilege was not waived.

As noted, in this case the plaintiff seeks recovery of attorney's fees paid to Starr. That request does not waive any communications between plaintiff and Starr. Therefore, based on the foregoing, the motion seeking any communications between plaintiff and Starr is denied.

So ordered.

ENTER:

DATED: June 6, 2024
Brooklyn N.Y.

_____
Hon. Leon Ruchelsman
JSC

11