OPINION OF THE COURT
Nicholas A. Clemente, J.
This is a proceeding to quash a subpoena duces tecum. The underlying allegations are that a defendant, armed with two guns, attempted to kill a police officer during the course of a robbery. One of the guns, when recovered, was recovered without its clip and bullets. The District Attor *349 ney maintains that the defendant’s attorney now has possession of these items. On February 9, 1982, a court-ordered subpoena duces tecum was served upon the attorney requiring the production before a Grand Jury of “all tangible property relating to a certain .25 caliber automatic pistol, including ammunition and an ammunition clip.”
The attorney, while admitting possession of ammunition and a clip, without conceding their relationship to a particular weapon, moves to quash the subpoena essentially contending that any property or information his office received was as a result of privileged communications between attorney and client.
It should be noted that the People do not dispute that the property was delivered to the attorney in order to perform scientific tests upon the objects. That is, rather than withholding the instrumentality of a crime, the objects were to be tested so as to demonstrate that they were not a part of such instrumentality, or perhaps to establish that the pistol and its clip when placed together rendered the weapon inoperable. This, conceivably, might lessen the degree of some offense or remove a necessary element of a crime. In fact, the District Attorney, acknowledging such a possibility, by the subpoena also seeks disclosure of the results of any scientific tests performed upon the clip and bullets. On February 17, 1982 the court conducted an in camera hearing on this matter.
The defense attorney testified that the ammunition and clip were given to him, at his office, by the defendant. He stated that the defendant was accompanied by Annette Martinez, who he believed to be the wife of the defendant. He further testified that the objects were carried in a brown paper bag.
Annette Velez, known to defense attorney as Mrs. Martinez, testified for the People at the hearing. Her testimony traced an episodic series of events commencing with the discovery of the ammunition and clip by one Wanda in St. Patrick’s Church, being then passed to a sister of the defendant, who in turn gave them to the-witness who stored them in her home for several days, and culminated *350 in the delivery to the attorney, at his office, by the defendant, in the presence of Miss Velez.
Annette Velez further testified that although she is not formally married to the defendant she has lived with him as husband and wife for two years, been supported by him and borne his child. Thus, Miss Velez’ presence at the time of the property transfer complicates the issues further because the defendant’s attorney contends that the social relationship between the defendant and this witness is of sufficient intimacy to trigger the claim of privilege as it pertains to husband and wife as well as the one between attorney and client.
In my view, a determination of the merits of the controversy presented resolves itself into a determination of the parameters of these legal privileges, if any. Before examining those parameters, however, it would be helpful to understand the basis of the attorney-client privilege in this State as well as the factors which must appertain in order to establish the privilege. In Matter of Priest v Hennessy (51 NY2d 62, 67-68), the Court of Appeals stated the following: “The attorney-client privilege is, in this State, a creature of statute. (CPLR 4503, subd [a].) It exists to ensure that one seeking legal advice will be able to confide fully and freely in his attorney, secure in the knowledge that his confidences will not later be exposed to public view to his embarrassment or legal detriment. (See, e.g., Matter of Jacqueline F., 47 NY2d 215, 218; Hurlburt v Hurlburt, 128 NY 420, 424; see, also, 8 Wigmore, Evidence [McNaughton rev, 1961], § 2291 [hereinafter Wigmore]; Richardson, Evidence [10th ed], § 410.) The privilege, however, is not limitless. It has long been recognized that ‘the attorney-client privilege constitutes an “obstacle” to the truth-finding process, the invocation of which should be cautiously observed to ensure that its application is consistent with its purpose.’ Matter of Jacqueline F., 47 NY2d 215, 219, supra; Matter of Horowitz, 482 F2d 72, 81-82; Matter of Field, 408 F Supp 1169, 1173; 5 Weinstein-Korn-Miller, NY Civ Prac, par 4503.19, p 45-148; 8 Wigmore, § 2291, p 554.)”
The court then discussed (pp 68-69) four principles to be considered in determining whether the privilege arises: *351 “First, it is beyond dispute that no attorney-client privilege arises unless an attorney-client relationship has been established. Such a relationship arises only when one contacts an attorney in his capacity as such for the purpose of obtaining legal advice or services. (CPLR 4503, subd [a]; see, e.g., People v Beige, 59 AD2d 307, 309; United States v United Shoe Mach. Corp., 89 F Supp 357, 358-359, supra; 8 Wigmore, § 2292.) Second, not all communications to an attorney are privileged. In order to make a valid claim of privilege, it must be shown that the information sought to be protected from disclosure was a ‘confidential communication’ made to the attorney for the purpose of obtaining legal advice or services. (Matter of Jacqueline F., 47 NY2d 215, 219, supra; People ex rel. Vogelstein v Warden of County Jail of County of N. Y., 150 Misc 714, 717-718; 8 Wigmore, § 2292.) Third, the burden of proving each element of the privilege rests upon the party asserting it. (Matter of Gavin, 39 AD2d 626, 628; Matter of Grand Jury Empanelled Feb. 14,1978, 603 F2d 469, 474.) Finally, even where the technical requirements of the privilege are satisfied, it may, nonetheless, yield in a proper case, where strong public policy requires disclosure. (Matter of Jacqueline F., 47 NY2d 215, supra; People ex rel. Vogelstein v Warden of County Jail of County of N. Y., 150 Misc 714, supra.)”
In applying the four-prong test of Priest (supra), it becomes clear that our concern must be directed at two factors, namely, whether the delivery of tangible property may constitute a communication subject to the attorney-client privilege, and if so, whether public policy precludes application of the privilege in this case.
In considering the confidentiality of the communication at bar it must be remembered that the District Attorney seeks the production of physical items and not verbal utterances. Since the raison d’etre of the privilege is to allow clients to consult freely with their attorneys, it follows that such privilege should not be constrictively defined or interpreted. Therefore, it is as equally applicable to the transference of a physical item as it is to an otherwise conventional utterance. Accordingly, I conclude that the delivery of the ammunition and clip to the attor *352 ney falls within the ambit of the attorney-client privilege. It is noteworthy that the District Attorney does not contest the point (cf. People v Daghita, 299 NY 194; Richardson, Evidence [10th ed], p 409).
Having concluded that there is a communication subject to privilege does not, however, address the issue of an attorney’s professional responsibilities when he is in possession of parts of a pistol which may have been involved in the commission of a crime. There can be no doubt that it is an abuse of a lawyer’s professional duties to knowingly take possession of and secrete the instrumentalities of a crime (Matter of Ryder, 381 F2d 713, 714, affg 263 F Supp 360; cf. Anderson v State, 297 So 2d 871 [Fla]). The attorney-client privilege is not a cloak which permits either the defendant or his attorney to withhold evidence of criminality. Otherwise instrumentalities and fruits of crime would be beyond the reach of the law by the mere fact that a defendant turned them oyer to an attorney.
The instant case, of course, does not present such a problem since there is every reason to believe that defense counsel was intent upon obtaining scientific testing to establish the harmless origins of the ammunition and clip. Notwithstanding that fact, the attorney should not be able to keep the subject items from the Grand Jury. Public policy demands that this tangible property, for which there are reasonable grounds to believe may have been involved in a crime, should be made available to the Grand Jury for its investigation.
It should be pointed out that absent any public policy considerations there would still be another circumstance herein that would prevent application of the privilege. That circumstance is the presence of Miss Velez at the time the ammunition and clip were delivered.
CPLR 4502 (subd [b]) provides: “Confidential communication privileged. A husband or wife shall not be required, or, without consent of the other if living, allowed, to disclose a confidential communication made by one to the other during marriage” (emphasis supplied).
The operable words insofar as we are concerned are “during marriage.” Defendant and Miss Velez were con *353 cededly never married. Therefore between the two there can be no privileged communication. What is significant about Miss Velez’ presence, however, is its effect on the attorney-client privilege. In my view, her presence vitiates the privilege even if it would otherwise apply.
In Baumann v Steingester (213 NY 328), the testatrix in the presence of Mrs. Stiefhold, her companion and housekeeper, gave her attorney instructions in preparing her will. The Court of Appeals in holding that the lawyer should have been allowed to testify about these instructions stated the following (at pp 332-333): “Mrs. Stiefhold was not present and acting in the character of a confidential agent of the testatrix, nor was her presence necessary to enable the parties to communicate with each other. No attempt was made by the testatrix to prevent her hearing the communication which she made to her attorney * * * The fact that these instructions were given in the presence and in the hearing of Mrs. Stiefhold is a circumstance indicative of the fact that the communication was not made in confidence. A third person even though a mere stranger or bystander in whose hearing communications are made by a client to an attorney may testify to such communications. (Jackson v. French, 3 Wend. 337; People v. Buchanan, supra.) To allow a stranger or bystander who overhears such a conversation to testify to what he heard and at the same time preclude the attorney of the client from giving his testimony as to what occurred might often result unfairly to the client for whose protection the privilege is designed. The communication not being confidential the attorney is not privileged from disclosing it.”
Similarly, here, there can be no doubt that Miss Velez may testify about transfer of the clip to defendant’s lawyer. Therefore, her presence at the time of transfer contravenes the confidentiality of that transaction vis-a-vis defendant and his lawyer so that the privilege does not apply.*
Interestingly, even if Miss Velez were to be regarded as a spouse the privilege might still not apply. One commenta *354 tor has stated in this regard that “When the third person present [at an attorney-client meeting] is the husband or wife of the client, neither spousal nor attorney-client privilege protects the conversation; the attorney’s presence prevents the spouses from speaking in confidence and the spouse’s presence prevents the attorney and client from talking confidentially” (5 Zett, NY Grim "Prac, p 35-29).
Accordingly, I conclude that defense counsel cannot by virtue of the attorney-client privilege refuse to comply with the subpoena duces tecum. In any event, even if the items were privileged Miss Velez’ presence at the time they were turned over to the defendant’s attorney precludes attachment of the privilege.
Despite this conclusion I am obliged to consider attendant consequences which might prejudice this defendant should there be full compliance with the terms of the subpoena duces tecum.
On the one hand, a lawyer, in answer to a subpoena, must produce any instrument which his client could have been compelled to produce (Matter of Victor, 422 F Supp 475, 477; Jones v Reilly, 174 NY 97, 105). The defendant, on the other hand, could not (unless granted immunity) be compelled to appear before the Grand Jury and produce the ammunition and clip. Thus, the defendant’s attorney may be compelled to do that which his client is constitutionally protected from doing since ordinarily Fifth Amendment rights may not be vicariously asserted.
It is hard to imagine anything that would be more unfair. Of more significance, however, is the difficulty that arises when a defendant’s attorney is forced to appear before the Grand Jury and in effect give testimony against his own client. While the privilege does not protect this tangible property there should be some protection for the defendant from having his own attorney testify that he received the ammunition and ammunition clip from the defendant. Moreover, if the attorney can be forced to testify before a Grand Jury then he would also be subject to call during the trial.
Thus two of defendant’s constitutional rights are in jeopardy. First, a right to trial has no meaning unless it is *355 a fair trial and second, by requiring his lawyer to testify, that lawyer can no longer represent the defendant. The defendant may now complain that he has been deprived of the counsel of his choosing.
While privileged communications may be easily waived by the improvident actions of a defendant, a waiver of constitutional rights should be by more knowing and conscious acts.
In this regard, the District Attorney has been cognizant of the problem and acknowledges that no testimonial proof is sought from defense counsel so long as she obtains the subject items. Moreover, it is clear that the District Attorney would be entitled to these items, if not by subpoena then almost certainly by means of a search warrant (however unseemly the execution thereof upon defense counsel’s office might be). Therefore, a practical solution to the dilemma presented by this case mandates that defense counsel turn over the ammunition and clip to the District Attorney’s office without the necessity of the attorney personally appearing before the Grand Jury. (Cf. State ex rel. Sowers v Olwell, 64 Wn 2d 828.) Thereby the public interest in criminal investigation is balanced fairly with the other public interest of affording the defendant a fair trial with counsel of his own choosing.
The motion to quash is accordingly denied except that defense counsel shall deliver forthwith the ammunition and ammunition clip to the District Attorney instead of the Grand Jury.
In regard to disclosure of any test results that the defense may have performed on the tangible property, the People are not now entitled to such results. It would be premature at this point to apply CPL discovery procedures. Subsequent developments may make the District Attorney’s need for these tests academic and the court is loathe to order their production now.

 There is no need to consider whether Miss Velez was an agent of the defendant and what the effect of agency is on the attorney-client privilege since the facts here show that Miss Velez was not acting for the defendant at the time of transfer to the attorney but was merely a companion.