In the Matter of EDWARD J. KURIANSKY, as Deputy Attorney-General for Medicaid Fraud Control, Individually and on Behalf of the May 1988 Bronx County Grand Jury, Petitioner, v ROBERT G. SEEWALD, as Acting Justice of the Supreme Court, et al., Respondents.

First Department, July 20, 1989

## APPEARANCES OF COUNSEL

*Edward J. Kuriansky, Deputy Attorney-General (Arthur G. Weinstein, Lawrence N. Gray, Donald H. Zuckerman* and *Michael R. Berlowitz* of counsel), petitioner *pro se.*

*Jack S. Hoffinger* and *Leon B. Polsky* of counsel *(Hoffinger Friedland Dobrish Bernfeld & Hasen,* attorneys), for Robert G. Seewald, respondent.

*Solomon H. Kaplan* for Bhupendra Patel, respondent.

## OPINION OF THE COURT

ROSENBERGER, J.

On February 17, 1988, Justice Robert G. Seewald, one of the respondents herein, impaneled a Grand Jury for Special Investigations into Criminal Activities in the Medicaid Program in Bronx County. Prior to its initial expiration, the Grand Jury's term was extended to July 1, 1988, and again to October 17, 1988. On April 28, 1988, petitioner issued a subpoena duces tecum to respondent Bhupendra Patel, a physician enrolled in the Medicaid program, for all of his Medicaid patient records from January 1984 through April 28, 1988. The subpoena was returnable May 5, 1988, six days after it was issued. Respondent Patel sought an adjournment on the ground that the subpoena called for production of several thousand patient charts which were used by respondent Patel and other physicians in the daily operation of the clinic.

Respondent Patel sought additional time to comply with the subpoena, and attempted to work out an agreement with the Attorney-General's office regarding production of the voluminous documents. However, on May 31, the Special Assistant Attorney-General moved for an order holding respondent in contempt. Justice Seewald denied the motion on condition

that respondent produce the documents in the time and manner directed by the court. On September 8, 1988, petitioner again moved to have respondent Patel held in contempt for willful failure to comply with the court's directive because he had produced only 2,862 of the 3,753 charts for his Medicaid patients. Dr. Patel asserted that the 891 missing charts were either lost, or in the possession of doctors who no longer worked at the clinic, or pertained to patients he had treated at other medical centers. The court again declined to find respondent guilty of criminal contempt.

Thereafter, on December 1, respondent's counsel appeared before the court to complain that the Special Assistant Attorney-General was not returning the original records to his client as required by the court. The Special Assistant acknowledged that this was true and agreed to divulge the reasons for his refusal to the court in camera. During the in camera presentation, the Special Assistant made several statements which led the court to conclude that "no Grand Jury has ever been empaneled to hear evidence of or investigate alleged wrongdoing by Patel." Justice Seewald revealed this newly discovered information to respondent's counsel and ordered the subpoenaed records "boxed and sealed" pending a hearing to determine "when, if at all, Petitioner opened the investigation involving Patel before a Grand Jury."

At the hearing on January 31, 1989, the Special Assistant explained that although the subpoena referred to a criminal prosecution titled "People v. B. B. Doe", all of petitioner's cases used the Doe pseudonym for reasons of secrecy and that Grand Jury subpoenas were not issued against named individuals. The Special Assistant conceded that none of the documents produced by Dr. Patel had, as yet, been presented to the Grand Jury, and that it might be several months before his office presented any of this evidence. However, he maintained that there was an ongoing "generic" investigation before the Special Grand Jury and that several preliminary witnesses had testified regarding "nuances of the Medicaid system".

Justice Seewald, however, rejected petitioner's position, finding that no Grand Jury proceeding had been "opened" with regard to Dr. Patel and that petitioner had therefore improperly issued a Grand Jury subpoena when there was no Grand Jury investigation in progress to which Dr. Patel's records were relevant. The court *sua sponte* declared the subpoena null and void and by order dated March 22, 1989, directed

petitioner to return all of the records delivered pursuant to it to Dr. Patel. Petitioner then commenced this CPLR article 78 proceeding to prohibit Justice Seewald from enforcing this order.

The initial question which confronts us is whether the extraordinary relief requested, in the nature of a writ of prohibition, is available and, therefore, whether this article 78 proceeding may be entertained. Prohibition is not available merely to correct or prevent errors of substantive or procedural law which are subject to review on appeal, or in ordinary proceedings at law or in equity. It is, however, available "both to restrain an unwarranted assumption of jurisdiction and to prevent a court from exceeding its authorized powers in a proceeding over which it has jurisdiction". (*La Rocca v Lane,* 37 NY2d 575, 578-579 [1975]; *Matter of Gold v Gartenstein,* 54 NY2d 627, 629 [1981]; *Matter of Morgenthau v Altman,* 58 NY2d 1057 [1983].)

The court unquestionably has supervisory authority over the Grand Jury (*People v Stern,* 3 NY2d 658, 662 [1958]), particularly as to procedural matters such as the order in which witnesses are presented (*Matter of Morgenthau v Altman, supra),* and the terms and conditions upon which documents submitted pursuant to a subpoena duces tecum may be retained by the Grand Jury or District Attorney on behalf of the Grand Jury (CPL 610.25 [2]). However, insofar as its jurisdiction is concerned, the Grand Jury is an independent body. "As a Grand Jury's plenary power is derived from the Constitution and the statutes and is in nowise dependent upon the jurisdiction of the court for which it convened, it follows that it could not be curtailed by a court order unless such order is made pursuant to a clearly drawn statute explicitly limiting it" (*People v Stern,* 3 NY2d, at 662-663, *supra).*

In this case, the petition challenges the court's directive regarding petitioner's continued possession of the documents, a matter which would appear to be within the court's supervisory power under the express terms of CPL 610.25 (2). Here, however, the order was not based on the statutory consideration of the "reasonableness of such possession", but upon the court's *sua sponte* determination that the documents were not relevant to any ongoing investigation before the Grand Jury.

Although respondent Seewald admitted in his verified answer that the Grand Jury was in existence on the date the subpoena issued and on its return date, he contends that

because "no attempt was made to open a proceeding or investigation" on the return date, the Grand Jury "is and was powerless to consider the matters relating to Dr. Patel". This argument assumes, incorrectly, that the Grand Jury must specifically identify a target for its investigation before it may pursue evidence in that individual's possession. The law, however, is to the contrary: "The Grand Jury is an investigatory body with broad exploratory powers, the scope of which are 'not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime'. *(Blair v United States,* 250 US 273, 282; see *Matter of Edge Ho Holding Corp.,* 256 NY 374, 381-382.)" *(Virag v Hynes,* 54 NY2d 437, 443 [1981].) The fact that this Grand Jury was specifically impaneled to investigate Medicaid fraud in The Bronx, and the fact that respondent Patel is a Medicaid provider practicing in The Bronx, make it difficult to fathom the court's view that this Grand Jury's investigation was not broad enough to encompass matters concerning Dr. Patel.

Even if the Grand Jury did not consider evidence concerning Dr. Patel during its original term, this in no way prohibited the Grand Jury from considering such evidence during its extended term. In *People v Stern (supra),* the Court of Appeals affirmed that a Grand Jury had the power to find and present indictments during its extended term which did not relate to the subject matter under investigation during the original term in which it was impaneled. *(See, Matter of Seidenberg v County Ct.,* 34 NY2d 499, 508 [1974].) Nor, is it significant that the documents subpoenaed were not immediately presented to the Grand Jury inasmuch as the prosecutor has an unequivocal right to possess and retain materials received pursuant to a Grand Jury subpoena (CPL 610.25; *Matter of Brunswick Hosp. Center v Hynes,* 52 NY2d 333, 338 [1981]; *Matter of Hynes v Moskowitz,* 44 NY2d 383, 391-393 [1978]).

We therefore find that the court's determination was based upon an erroneous view of the Grand Jury's jurisdiction and constituted an unauthorized intrusion thereon. In such a case, the extraordinary remedy of prohibition is available to prevent the court from exceeding its authorized, supervisory powers and intruding upon the independent jurisdiction of the Grand Jury. Accordingly, the order of the Supreme Court, Bronx County (Robert Seewald, J.), entered on or about March

22, 1989 should be reversed, on the law, and the petition should be granted, without costs.

SULLIVAN, J. P., KASSAL, WALLACH and RUBIN, JJ., concur.

Application for a writ of prohibition unanimously granted, without costs and without disbursements.