OPINION OF THE COURT
Rena K. Uviller, J.
May a lawyer refuse to divulge his client’s address to the client’s judgment creditor on grounds of the attorney-client privilege? Some courts have held that because an address is not evidentiary information it is never privileged. Others have held to the contrary. (Cf. Richards v Richards, 64 Misc 285, affd 143 App Div 906; Matter of Shawmut Min. Co., 94 App Div 156.)
The applicability of the privilege to the whereabouts of an elusive litigant was recently the subject of a long and thoughtful opinion by the New York Court of Appeals. In Matter of Jacqueline F. (47 NY2d 215), the court held that a lawyer who *628 had represented an aunt in child custody proceedings against the child’s natural parents, was obliged to divulge the aunt’s address to the Surrogate’s Court. The aunt had disappeared with the child, thereby frustrating a court order directing her to relinquish the little girl to her parents.
In this case, a parent is not seeking her child. Rather Potamkin Cadillac seeks a delinquent purchaser. On December 15, 1978, Potamkin obtained a default judgment against Wayne Karmgard for the sum of $3,060. Efforts to locate Mr. Karmgard or his assets were unavailing. The creditor served an information subpoena pursuant to CPLR 5223 upon a law firm retained by Mr. Karmgard in an unrelated Supreme Court action, seeking the whereabouts of Mr. Karmgard and of his assets.[1] The law firm refused to divulge the information on the grounds that it is privileged and because disclosure would be in violation of the Code of Professional Responsibility.[2] The creditor filed the instant motion for an order directing the firm to provide the information.
The affidavit in opposition from James P. Corcoran, Esq., a firm member, asserts that his firm never represented Mr. Karmgard in the action by Potamkin Cadillac, although it has represented him in the past and continues to do so in unrelated matters. Further, Mr. Corcoran states that the information sought by the creditor was provided to him by Mr. Karmgard in the course of their professional relationship and that "the client has expressly instructed me to keep such information which I have received from him strictly confidential.”
The attorney-client privilege, like all privileges, is an exception to the fundamental duty of all persons to give testimony about relevant facts of which they have personal knowledge. (8 Wigmore, Evidence [McNaugnton rev, 1961], § 2285.) This basic testimonial duty enhances the likelihood that from the judicial process truth will emerge and disputes be resolved. As with all privileges, that of attorney and client was forged *629 because other public policies were deemed as important as truth and conflict resolution. (See Hurlburt v Hurlburt, 128 NY 420; Brooklyn Sav. Bank v Park Slope Realty Corp., 146 Misc 4; People ex rel. Vogelstein v Warden of County Jail of County of N. Y., 150 Misc 714.) For a lawyer and his client, the design of the ancient privilege that shields their exchange is to promote candor and confidence, "by insuring frank revelation by the client to the attorney without fear of a forced disclosure; in other words, to promote freedom of consultation.” (People ex rel. Vogelstein v Warden of County Jail of County of N. Y., supra, at p 717; see Richardson, Evidence [10th ed], § 410.)
Since Mr. Corcoran’s affidavit on this motion is uncontradicted, it cannot be gainsaid that candor and freedom of consultation between him and his client would not be severely impaired if he were required to disclose any of the information, including his client’s address. (Cf. Banco Frances e Brasileiro S. A. v Doe, 36 NY2d 592, cert den 423 US 867.) The purpose of the lawyer-client privilege is thus served by the refusal to divulge Mr. Karmgard’s address. Accordingly, the exchange between the two men is protected, even though it may not be evidentiary in nature.[3] (Matter of Jacqueline F, supra, p 221; Neugass v Terminal Cab Corp., 139 Misc 699.) That finding, however, does not end the inquiry because Jacqueline F. teaches that in some circumstances the address of a litigant, although otherwise privileged, must nonetheless be divulged.
First, the Court of Appeals clarified that the privilege may not shield a litigant’s whereabouts during the pendency of the very litigation in which he and his attorney have participated; that "although such information is privileged it must be disclosed in the course of a pending action where disclosure is necessary for the proper administration of justice.” (Matter of Jacqueline F., 47 NY2d 215, 221, supra.) In other words, a litigant and his lawyer may not invoke both the judicial process and the privilege with the result that the former is frustrated by the latter. Second, Matter of Jacqueline F. teaches that even where the litigant’s address is not concealed for purposes of thwarting litigation it must, although other *630 wise privileged, be disclosed in the face of special circumstances. The applicability of the privilege to a client’s address must be weighed in context against the strength of countervailing considerations.
In Matter of Jacqueline F., the attorney from whom the address was sought had initiated an action in Surrogate’s Court on his client’s behalf for custody for her young niece. Although strenuously opposed by the natural parents, the client aunt prevailed. Later the custody award to the aunt was revoked, but the aunt’s attorney obtained a stay pending appeal. When the aunt then disappeared with the child, the parents moved to vacate the stay, but their motion was denied on the strength of a representation by the aunt’s attorney that his client had merely gone on vacation with the child. The parents ultimately prevailed in the appellate courts and it then emerged that the aunt had in fact disappeared with the child.
The lawyer in Matter of Jacqueline F. thus vigorously invoked the judicial process, including the appellate route, on the client aunt’s behalf. When the client suffered a reversal within the course of litigation she herself initiated, she then dodged the court’s process by disappearing with the child. Her lawyer, albeit unwittingly, abetted her evasion by representing to the court that she would return. In a contempt action against the aunt, the Surrogate’s Court ordered her attorney to disclose her whereabouts and he refused by invoking the lawyer-client privilege.
In order to prevent precisely this kind of collusion and evasion, some courts have ruled that during the pendency of a lawsuit the privilege in regard to a litigant’s address, is temporarily suspended and the address must be divulged by his lawyer. (Richards v Richards, 69 Misc 285, supra; O’Connor v O’Connor, 62 Misc 53.) Once the proceeding is terminated and the time for appeal has expired, however, the privilege reattaches. There is no longer a need to protect the course of litigation from an obstructive party. (Matter of Trainor, 146 App Div 117.)
During litigation, moreover, a party’s address is subject to normal discovery pursuant to CPLR 3118,[4] although the lawyer-client privilege is a bar in a proper case. (Matter of *631 Jacqueline F., 47 NY2d, at p 221.) Once the verdict is rendered, however, discovery is no longer functionally available because the penalties normally imposed by a court for failure to disclose are ineffective. The action may no longer be suspended in the case of a recalcitrant plaintiff nor the answer stricken in the event of an elusive defendant. (See McBrien v Miller, 166 NYS 445; Walton v Fairchild, 4 NYS 552; Levy v Coy, Hunt & Co., 64 Misc 39.)
Thus, it is only during the pendency of a lawsuit that a party’s address is subject to compulsory disclosure. More important for purposes of this case, when disclosure from an attorney has been directed, it has been stressed that "[t]he power of a court to compel an attorney to disclose the address of his client is confined to the proceeding or case in which the attorney appears for his client.” (Hyman v Corgil Realty Co., 164 App Div 140, 141; emphasis added; Brooklyn Sav. Bank v Park Slope Realty Corp., 146 Misc 4, supra; see Matter of Jacqueline F, supra, concurring opn Jones, J.) This is because the purpose of piercing the privilege is to protect it from abuse by a lawyer and client bent on impeding litigation in which they have participated. In Matter of Schroeder (157 NYS 142, 143), the court refused to order an attorney to disclose the address of his client who was an estate administrator, relying upon the fact that "petitioner does not allege that [the attorney] is the attorney for the administrator in any proceeding pending in this court, nor does he state facts which would justify his designation * * * He may be advising [his client] in the ordinary course of administration of the estate, but he is not attorney for the administrator in any proceeding pending in this court.”
In this case it is uncertain whether the service of an information subpoena is a continuing part of the proceeding initiated against Mr. Karmgard.[5] But even if it is, it is per *632 fectly clear that Mr. Corcoran, the attorney from whom disclosure is sought, never participated or appeared in that action in any way. Indeed, Mr. Karmgard himself never actively participated in the underlying action inasmuch as the judgment against him was obtained upon his default. (Cf. Neugass v Terminal Cab Corp., 139 Misc 699, supra.) This is in stark contrast to Matter of Jacqueline F., where both the client and her lawyer vigorously invoked and sought to profit from the judicial process, only to dodge it when its progress was not to their liking.
It is significant, moreover, that in Matter of Jacqueline F., it was the trial court that directed the disclosure of the client’s address.[6] The Court of Appeals review was of the lower court’s power to compel disclosure in a proper case. This case is in an altogether different posture, inasmuch as it is a party, not the court, who seeks the address through posttrial discovery. (See Matter of Jacqueline F., 47 NY2d, at p 225, concurring opn Jones, J.) The power of a trial court to grant or deny a protective order for failure to disclose is traditionally a matter of a judicial discretion. (Cf. Banco Frances e Brasileiro S. A. v Doe, 36 NY2d 592, supra; Siegel, New York Practice, § 353, p 439.)
For yet another reason, both the holding and rationale of Matter of Jacqueline F. are inapposite here. In Clark v United States (289 US 1), Mr. Justice Cardozo explained that privileges, as exceptions to the basic testimonial duty described earlier, are not immutable. Some of them must yield to more transcendent values. "[T]he recognition of a privilege,” Justice Cardozo wrote (p 13), "does not mean that it is without conditions or exceptions. The social policy that will prevail in many situations may run foul in others of a different social policy, competing for supremacy. It is then the function of a court to mediate between them, assigning, so far as possible, a proper value to each”. (See People ex rel. Vogelstein v Warden of County Jail of County of N. Y., 150 Misc 714, supra.)
The competing social policy with which the Court of Appeals was concerned in Matter of Jacqueline F. is the State’s parens patriae obligation to insure the well-being of children. (Matter of Jacqueline F., 47 NY2d, at p 222.) In Matter of Jacqueline F., the trial court decided that it was in the child’s *633 best interest to live with her parents. The aunt’s address was critical to a realization of that determination. The ruling that the lawyer-client privilege must yield to the child’s welfare was consistent with earlier Court of Appeals decisions which teach that the safety of children takes precedence over otherwise applicable procedures. (See, e.g., People ex rel. Wayburn v Schupf, 39 NY2d 682.)
From the adverse party’s view as well, that is, the parents of Jacqueline F., the interests were immense. The United States Supreme Court has repeatedly held that one of the fundamental freedoms of the Bill of Rights is a parent’s "immediate right to the care, custody, management and companionship of * * * minor children.” (May v Anderson, 345 US 528, 533.) In determining that the First, Ninth and Fourteenth Amendments accord to parents a substantive constitutional right to their own children, the Supreme Court has declared that the freedom to "raise one’s children have been deemed 'essential,’ * * * 'basic civil rights of man,’ * * * and '[rjights far more precious * * * than property rights’ ”. (Stanley v Illinois, 405 US 645, 651; Wisconsin v Yoder, 406 US 205.)
Potamkin Cadillac unquestionably has an interest in and a legal right to property adjudged to belong to it. Unlike the right to one’s child, however, there is no substantive due process right to property. Although a person may not be deprived of property in absence of procedural due process, there is no correlative substantive right. Thus, in this case neither the res — property in the form of a money judgment, nor the interests of the petitioning litigant — a frustrated creditor, can be compared to a child’s well-being and her parent’s constitutional right to her custody. The competing social values of which Justice Cardozo wrote in Clark and with which the Court of Appeals was concerned in Matter of Jacqueline F. are absent here. The privilege of the lawyer and client need not yield.
The motion for an order directing Mr. Corcoran to divulge the address of his client as well as other information sought by the creditor is denied.

. CPLR 5223 provides in pertinent part that, "[a]t any time before a judgment is satisfied or vacated, the judgment creditor may compel disclosure of all matters relevant to the satisfaction of the judgment, by serving upon any person a subpoena * * * and shall state that false swearing or failure to comply with the subpoena is punishable as a contempt of court.”
CPLR 5224 (subd [a], par 3) prescribes the contents and method of service of an information subpoena.

. The lawyer-client privilege is codified by CPLR 4503; see Code of Professional Responsibility, DR 14-101, EC 4-1.

. Although a client’s identity is not normally thought to be evidentiary, the Court of Appeals observed that "notwithstanding opinion to the contrary the rule in New York is not so broad as to state categorically that the privilege never attaches to a client’s identity.” (Matter of Jacqueline F., 47 NY2d, at p 220.)

. CPLR 3118 provides in pertinent part that, "[a] party may serve on any party a written notice demanding a verified statement setting forth the post office address. and residence of the party”.

. The Court of Appeals in Matter of Jacqueline F. held that the contempt proceeding against the aunt for concealing the child was not a continuing part of the custody proceeding for purposes of the lawyer-client privilege (47 NY2d, at p 221), although the court sustained compulsory disclosure of the address for other reasons. (See this opn, p 630.) By analogy, the service of an information subpoena can be seen as a proceeding separate from the underlying action by Potamkin against Mr. Karmgard. On the other hand the legislative history of article 61 of the Civil Practice Act (the predecessor to CPLR article 52) suggests that "post-trial examinations do not alone institute a new proceeding. Rather they are considered to be proceedings in the main action in the same manner as pre-trial examinations.” (Third Preliminary Report of Advisory Committee on Practice and Procedure, NY Legis Doc 1959, tit 61, p 261.)

. The SCPA requires a fiduciary, who may be a guardian, to keep the court informed of changes of address. (SCPA 708, subd 1.)