**ELLIOTT ASSOCIATES, L.P., Plaintiff,**

v.

**THE REPUBLIC OF PERU, Defendant.**

**ELLIOTT ASSOCIATES, L.P., Plaintiff,**

v.

**BANCO DE LA NACION, Defendant.**

**Nos. 96 Civ. 7917(RWS),
96 Civ. 7916(RWS).**

United States District Court.
S.D. New York.

April 28, 1997.

---

Weil, Gotshal & Manges L.L.P.(Otto G. Obermaier, Brian S. Rosen, Richard H. Epstein, Nadja Webb, of counsel), New York City, Bainbridge & Straus (Michael Straus, of counsel), Birmingham, AL, for Plaintiff.

Baker & Hostetler (Mark A. Cymrot, Janinne D. Herrera, Paul O. Gagnier, of counsel), Washington, DC, for Defendants.

## OPINION

SWEET, District Judge.

Plaintiff Elliott Associates, L.P. ("Elliott") has moved for summary judgment under Rule 56, Fed.R.Civ.P. against the defendants the Republic of Peru ("Peru") and Banco de la Nacion ("Banco"). For the reasons set forth below, the motion is denied at this time.

### Prior Proceedings

Elliott commenced these actions on October 18, 1996, to recover on certain agreements, the actions were removed to this Court, Elliott's motion for an attachment was denied as an exercise of discretion on December 12, 1996, and Elliott's instant motion for summary judgment was heard and considered fully submitted on February 5, 1997.

### Facts and Background

The complicated background to this controversy was set forth in the opinion of December 12, denying Elliott's motion for prejudgment attachments and will not be repeated, but rather adopted as if set forth fully here. *See Elliott Associates, L.P. v. Republic of Peru,* 948 F.Supp. 1203, 1204–07 (S.D.N.Y.1996). Certain additional matters relevant to the determination of this motion are noted below.

In the action brought by Pravin Banker Associates, Ltd. ("Banker") against Peru, raising many of the same issues underlying this proceeding, on December 23, 1996, the Honorable John Martin denied Banker's motion for execution upon the funds intended for the payment of interest under the Brady Agreement.

Some discovery in this action has been undertaken, and the defendants seek further discovery, principally relating to the role of Michael Straus ("Straus"), counsel to Elliott, pointing out that Straus has been involved in the following cases involving the collection of sovereign debt: *Allied Bank Int'l v. Banco Credito Agricola de Cartago,* 757 F.2d 516 (2d Cir.1985) (Straus' client was the only bank refusing to participate in the Costa Rican refinancing agreement), *cert. dismissed,* 473 U.S. 934, 106 S.Ct. 30, 87 L.Ed.2d 706 (1985); *Banque de Gestion Privee–Sib v. La Republica de Paraguay,* 787 F.Supp. 53 (S.D.N.Y.1992) (Paraguay sovereign debt); *Weston Compagnie de Finance et D'Investissement, S.A. v. La Republica del Ecuador,* 823 F.Supp. 1106 (S.D.N.Y.1993) (Order of attachment for Ecuador sovereign

debt); *Water St. Bank & Trust Ltd. v. Congo,* No.94–CV–1894 (S.D.N.Y) (Congo sovereign debt); *Water St. Bank & Trust Ltd. v. Republic of Ivory Coast,* No. 94 Civ. 2376 (S.D.N.Y.) (Ivory Coast sovereign debt); *Water St. Bank & Trust Ltd. v. Polish People's Republic,* No. 94 Civ. 02428 (S.D.N.Y.) (Polish sovereign debt); *Water St. Bank & Trust Ltd. v. Republic of Poland,* No. 95 Civ. 00042 (S.D.N.Y.) (Polish sovereign debt); *Water St. Bank & Trust Ltd. v. Republic of Panama,* 1995 WL 51160, 1995 U.S. Dist. LEXIS 1444 (S.D.N.Y. Feb. 8, 1995) (Panama sovereign debt); *Water St. Bank & Trust Ltd. v. Banco Central del Ecuador & Republic of Ecuador,* No. 95 Civ. 5253 (S.D.N.Y.) (Ecuador sovereign debt); *Elliott Assocs., L.P. v. Republic of Panama,* 1996 WL 474173, 1996 U.S. Dist. LEXIS 11973 (S.D.N.Y. Aug. 20, 1996) (Elliott was the only creditor to opt out of Panama's Brady Agreement); *L.N.C. Invs., Inc. v. Republic of Zaire,* No. 96 CV 5281 (S.D.N.Y.) (Zaire sovereign debt). With the exception of *Allied,* the plaintiffs in these actions, like Elliott here, were claimed to be secondary market purchasers of sovereign debt.

In addition, the defendants points out the delay between the trades of the debt obligations at issue here (which apparently began on January 31, 1996) and the closings of the assignments on April 12 and 19, after the *Pravin* decision in the Court of Appeals; a change in the price of the January 31 trade on April 12; a consistent price even though the trade tickets are dated weeks apart; a trade ticket dated March 1, 1996, for the purchase of $6,124,752.23 in debt of Banco Popular which was not implemented, suggesting the existence of an option which could be exercised after the *Pravin* decision.

In view of Straus's involvement in previous purchases of sovereign debt on the secondary market, Defendants contend he was well aware of the elements of the champerty defense. Moreover, Elliott knew that Peru sought to defend the closing of the Brady Agreement by refusing to negotiate with individual creditors, and the defendants infer from this that Elliott's demand letters and requests for negotiations were not in good faith, but rather a ploy to counter an anticipated defense of champerty.

The defendants also note that to date Elliott has advanced no strategy other than litigation that would meet its profit goals, particularly since, according to the defendants, the Brady Agreement options represent the maximum return available in the secondary market. Elliott's demand for full payment from the outset, its threat of litigation and its rejection of proposals to resell the debt back to its assignors are alleged to support the inference that litigation was the only strategy which would reap the profit Elliott was pursuing.

### Discussion

### Champertous Intent is an Issue of Material Fact

 Section 489 of the N.Y. Judiciary Law, which the defendants claim Elliott has violated, provides that:

> ... no corporation or association, directly or indirectly, shall solicit, buy or take assignment ... of a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon.

In order to prove champerty, the defendant must demonstrate that the plaintiff acquired the claim for the "sole" or "primary" purpose of bringing suit. *Elliott Assocs.,* 948 F.Supp. at 1208 (citing *CIBC Bank & Trust Co. v. Banco Central do Brazil,* 886 F.Supp. 1105, 1110 n. 6 (S.D.N.Y.1995)). Such a determination of champertous intent is "decidedly fact-specific." *C.I.B.C.,* 886 F.Supp. at 1111; *see also Sprung v. Jaffe,* 3 N.Y.2d 539, 544, 169 N.Y.S.2d 456, 147 N.E.2d 6 (1957) ("[T]he question of the intent and purpose of the purchaser or assignee is generally one of fact to be decided by the trier of the facts."). *Moses v. McDivitt,* 88 N.Y. 62, 65 (1882); *Fairchild Hiller Corp. v. McDonnell Douglas Corp.,* 28 N.Y.2d 325, 330, 321 N.Y.S.2d 857, 270 N.E.2d 691 (1971). Summary judgment is "ordinarily inappropriate where an individual's intent and state of mind are implicated." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir. 1985).

■ The purpose of Section 489 is to "prevent the resulting strife, discord and harassment which could result from permitting ... corporations to purchase claims for the purpose of bringing actions thereon...." *Banque de Gestion Privee–Sib,* 787 F.Supp. at 56 (citing *Fairchild Hiller,* 28 N.Y.2d at 329, 321 N.Y.S.2d 857, 270 N.E.2d 691 (1971)). In response to constitutional challenges to similar statutes, the United States Supreme Court has upheld a state's " 'compelling' interest in preventing those aspects of solicitation that involve fraud, undue influence, intimidation, overreaching, and other forms of 'vexatious conduct.' " *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 462, 98 S.Ct. 1912, 1922, 56 L.Ed.2d 444 (1978).

According to Elliott's Reply Brief at page 7:

> Champerty—which originated in a medieval distrust of lawyers and litigation—is never applied to defeat enforcement by a creditor acting to protect its ownership interests in an asset. Instead, champerty may in some cases provide a defense where the plaintiff [as] a "front" with no economic interest of its own in the asset, pursues litigation on behalf of a "stranger," and acts at such party's direction.

Here, the character and intent of the plaintiff are the essential and material facts to be determined on this record whether there is a genuine dispute as to those facts.

### Additional Discovery is Warranted

Under Rule 56(f), which is invoked by the defendants to counter Elliott's summary judgment motion, if further discovery is warranted, summary judgment should be denied, or at least deferred.

■ "It is the duty of this court under Rule 56(f) to ensure that the parties have been given a reasonable opportunity to make their record complete before ruling on a motion for summary judgment." *Skandinaviska Enskilda Banken v. Rathaus,* 624 F.Supp. 207, 209 (S.D.N.Y.1985). Rule 56(f) is to be liberally construed. *Berne St. Enters., Inc. v. American Export Isbrandtsen Co.,* 289 F.Supp. 195, 197 (S.D.N.Y.1968); *Carter v. AT & T Communications,* 759 F.Supp. 155, 160 (S.D.N.Y.1991).

■ As noted above, the key issue is Elliott's intent when it purchased Peruvian debt. Evidence regarding intent is largely within the control of Elliott.

After reviewing defendants' evidence of champerty in its December 12 opinion, this Court concluded that, "Defendants are entitled to discovery upon their allegations of champerty which may require a factual hearing upon a full record." *Elliott,* 948 F.Supp. at 1214. Discovery on the issue of champerty was recently permitted by Justice Gammerman in New York Supreme Court in Elliott's suit against Panama. Discovery on the issue of champerty was also permitted in *Water St. Bank & Trust Co. v. Congo,* No. 94–CV–1894 (S.D.N.Y.). *See also Aubrey Equities, Inc. v. S.M.Z.H. 73rd Assocs.,* 212 A.D.2d 397, 398–99, 622 N.Y.S.2d 276, 278 (1st Dept.1995) (summary judgment premature where additional discovery on champertous intent was necessary).

From the evidence currently available, defendants now seek the following discovery:

1. a complete document production and privilege list from Elliott, providing complete information concerning Elliott's partnership structure, the identity of the partners, the source of the funds for the relevant trades, complete information concerning the relevant trades, the closing of the assignment agreement and the planning for this lawsuit, as well as other information reflecting upon Elliott's intent in making the Peruvian and Panamanian debt trades;

2. depositions of Jay Newman, Paul Singer and other officials of Elliott who were involved in the decision to purchase Peruvian and Panamanian debt on the issue of their intent when making the purchases;

3. document discovery and depositions from Swiss Bank and ING concerning the Elliott trades, the reason for the delayed closings and any statements or other relevant information concerning Elliott's intent when it made the purchases;

4. document discovery and depositions from the assignors of Panamanian debt to Elliott for information reflecting upon Elliott's intent;

5. deposition of Michael Straus concerning his pattern of litigation against sovereigns, as it reflects upon Elliott's intent when purchasing Peruvian debt; and

6. depositions of officials of other secondary market traders whom Mr. Straus has advised on sovereign debt trading.

This list constitutes a satisfactory showing of need for "specific facts" sufficient to warrant further discovery under Rule 56(f).

### Summary Judgment is not Appropriate

■ The principles surrounding the disposition of motions for summary judgment are familiar and easily stated, but sometimes, as in this instance, difficult to apply.

Under the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Keywell Corp. v. Weinstein,* 33 F.3d 159, 163 (2d Cir.1994) (a party is entitled to summary judgment if "resolving all ambiguities and drawing all factual inferences in favor of the non-moving party, there is no genuine issue of material fact to be tried"); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). "Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P.1).

In this district, the courts have disposed of suits to enforce loan agreements with foreign governments or instrumentalities by summary judgment. *See, e.g., Allied Bank Int'l v. Banco Credito Agricola de Cartago,* 757 F.Supp. 516 (2d Cir.). *cert. dismissed,* 473 U.S. 934, 106 S.Ct. 30, 87 L.Ed.2d 706 (1985); *Pravin Banker Associates Ltd. v. Banco Popular del Peru,* 895 F.Supp. 660 (S.D.N.Y. 1995), *aff'd,* 109 F.3d 850 (2d Cir.1997); *Banco Cafetero (Panama) S.A. v. Republic of Peru,* 1995 WL 494573 (S.D.N.Y. August 18, 1995); *Banque de Gestion Privee–Sib,* 787 F.Supp. 53 (S.D.N.Y.1992); *National Union Fire Ins. Co. v. People's Republic of Congo,* 729 F.Supp. 936 (S.D.N.Y.1989); *A.I. Credit Corp. v. Government of Jamaica,* 666 F.Supp. 629, 632 (S.D.N.Y.1987). *See also Hanam, B.V. v. Kittay,* 589 F.Supp. 1042 (S.D.N.Y.1984) (and cases cited therein).

It is, of course, the position of Elliott that the defense of champerty is unavailable in the situation presented here, and the opinion of the Honorable Michael B. Mukasey in *Banque de Gestion Privee–Sib,* 787 F.Supp. 53 is instructive as to the difficulty of establishing a champerty defense. Faced with same defense urged here, Judge Mukasey noted the primacy of the question of intent and concluded that the showing before him was insufficient to raise an issue of material fact. Only after exhaustive examination of virtually every relevant consideration did the Court reach its conclusion that there was no genuine issue of champertous intent.

There is no question about the significance of the issues here, certainly to the parties when over thirty million dollars are at stake, and generally to the secondary market for sovereign debt obligations such as these. In the well-turned phrase of highly skilled counsel for Elliott, the prospect of recalcitrant debtors asserting the champerty defense and obtaining extensive discovery "makes Wall Street tremble" by questioning the common understanding of the nature of rights obtained in the secondary market for foreign debt instruments. *See Banque de Gestion Privee–Sib,* 787 F.Supp. at 57 (permitting defendants to create champerty defense by refusing to honor loan obligations would be "perverse result"). Elliott contends that the common practice of selling such debt for collection will be destabilized by the threat of protracted discovery. Indeed, persuasive and current English authority is cited in support of the right to enforce obligations even in the face of a sovereign's effort to

reorder its debt. *Camdex Int'l Ltd. v. Bank of Zambia,* [1996] 3 All Eng. R. 431(C.4), *appeal denied,* (H.L. July 11, 1996). It is suggested that the Brady Agreement is simply an unauthorized "cram down" strategy.

On the other hand, according to Peru, the plaintiff here is a blackmailer seeking to disrupt the national policies of Peru and the United States as expressed in the Brady Agreement and to defeat the interests of over ninety percent of the holders of Peruvian obligations who have expressed an intent to enter into the Agreement and by so doing give to Peru the opportunity to reenter the world capital markets.

No prior authority has upheld a champerty defense under these circumstances. However, further discovery has been held to be appropriate in the cases referred to above. Elliott has urged that the showing here is insufficient to support a champerty defense. In view of the significance and difficulty of the issue and the state of this record, it is appropriate to deny summary judgment at this time to permit further discovery. Application of the "medieval" defense of champerty in the secondary market for foreign debt raises daunting questions that should not be answered without having all the potentially material and relevant facts before the Court. To achieve that result, Elliott's motion for summary judgement must at this time be denied.

### Conclusion

The motion of Elliott for summary judgment is denied at this time.

It is so ordered.