**ELLIOTT ASSOCIATES, L.P., Plaintiff,**

v.

**THE REPUBLIC OF PERU, Defendant.**

**ELLIOTT ASSOCIATES, L.P., Plaintiff,**

v.

**BANCO DE LA NACION, Defendant.**

Nos. 96 CIV. 7917(RWS), 96 CIV. 7916(RWS).

United States District Court, S.D. New York.

Oct. 8, 1997.

Weil, Gotshal & Manges, L.L.P. (Otto G. Obermaier, Brian S. Rosen, Richard H. Epstein, Nadja Webb, of counsel), New York, NY, Bainbridge & Straus (Michael Strauss, of counsel), Birmingham, AL, for Plaintiff.

Baker & Hostetler (Mark A. Cymrot, Janinne D. Herrera, Paul O. Gagnier, of counsel), Washington, DC, for Defendants.

Pavelic & Levites, P.C. (Richard Cashman, Raymond A. Levites, of counsel), New York City, for Michael Straus.

## OPINION

SWEET, District Judge.

Defendant The Republic of Peru ("Peru") brings this motion to compel non-party Michael Straus ("Straus") to appear for deposition, pursuant to Rule 37(a) and 26(b)(1) of the Federal Rules of Civil Procedure, to answer questions relating to: (1) the dates and subject matter of his representation of Elliott; and (2) the addresses and telephone numbers of Raphael Gerstel and Christian Veilleux, both of whom Straus represented as their attorney in previous sovereign debt-related litigation. Straus opposes this motion on the grounds that the questions posed impinge on the attorney-client privilege. For the reasons set forth below, the motion will be granted in part and denied in part.

### Parties

Elliott Associates, L.P. ("Elliott") is a Delaware limited partnership authorized to do business in the State of New York with its principal place of business in New York, New York.

Banco de la Nacion ("Banco") is a foreign financial institution organized under the laws of Peru with its principal place of business in Lima, Peru.

Peru is a foreign state as defined in 28 U.S.C. § 1603(a).

### Prior Proceedings

Elliott commenced these actions on October 18, 1996 in the Supreme Court of the State of New York, County of New York, seeking money judgments based upon allegations of Banco's default under certain written loan agreements and Peru's default under a written guaranty securing certain loan agreements. Peru and Banco removed these actions to this Court on October 21, 1996. The background to this controversy is set forth in the previous opinions of this Court, familiarity with which is assumed. *See Elliott Assoc's. L.P. v. Republic of Peru,* 96 Civ. 7916, 1997 WL 436493 (S.D.N.Y. Aug. 1, 1997); *Elliott Assoc's, L.P. v. Republic of Peru,* 961 F.Supp. 83 (S.D.N.Y.1997); *Elliott Assoc's, L.P. v. Republic of Peru,* 948 F.Supp. 1203 (S.D.N.Y.1996).

Plaintiffs filed the instant motion on August 20, 1997. Oral argument was heard on September 25, 1997, at which time the matter was deemed fully submitted.

### Facts and Background

This Court denied Elliott's motion for summary judgment and granted additional discovery regarding defendant's theory that Elliott violated Section 489 of the New York Judiciary Law, which codifies the common law prohibition against champerty. *See Elliott,* 961 F.Supp. at 85.

Michael Straus, an attorney for Elliott who is not a party to this action, was deposed on July 29, 1997. At that time, Straus' counsel objected to, and Straus refused to answer, certain questions regarding the subject matter of discussions between himself and Elliott. Specifically, Peru was denied answers to questions relating to the dates and subject matter of Straus' representation of Elliott, including: (1) when and whether there were discussions concerning Elliott's status as a financial institution within the meaning of certain debt restructuring letter agreements dated as of May 31, 1983 among, *inter alia,* Peru, Peruvian banks and their foreign creditors (the "1983 Letter Agreements"); and (2) when and whether Straus provided advice to Elliott concerning the assignment agreements entered into with Swiss Bank Corporation and Internationale Nederlanden Bank, N.V. pursuant to which Elliott purchased the Peruvian debt.

According to Peru, the 1983 Letter Agreements purport to restrict assignment of the

debt to "financial institutions." Accordingly, Peru asserts, if Elliott knew that it would not be classified as a financial institution, then Elliott's only means of collecting the debt after the assignment would be litigation. The commitment to litigate to collect the debt, therefore, may be relevant to Peru's champerty defense.

Peru would also like to establish whether and when Straus first advised Elliott regarding the assignment agreements. This is relevant, according to Peru, to show that Straus' purported experience with suing sovereign debtors was integral to Elliott's investment strategy.

### Discussion

### I. Questions Regarding Straus' Communications With Elliott Will Be Limited To The Date Advice On Purchase of Peruvian Debt First Given

#### A. Privilege Issue Governed by New York Law

Rule 26(b)(1), Fed.R.Civ.P., provides that "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." In this context, courts consistently hold that the Federal Rules of Evidence govern the issue of privilege. *See United States v. Reynolds*, 345 U.S. 1, 6, 73 S.Ct. 528, 531, 97 L.Ed. 727 (1953) ("We think it should be clear that the term 'not privileged' . . . refers to 'privileges' as that term is understood in the law of evidence."); *Kinoy v. Mitchell*, 67 F.R.D. 1, 6 (S.D.N.Y.1975) ("Privilege, as used in Rule 26, means privilege as determined by the rules of evidence.").

Rule 501 of the Federal Rules of Evidence provides that in civil actions in which state law supplies the rule of decision, the privilege of a witness would be determined in accordance with state law. Fed.R.Evid. 501 ("[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness . . . shall be determined in accordance with State law."). Here, both the underlying claim by Elliott, and Peru's affirmative defense are based on New York law. Therefore, New York law governs the issue of privilege here.

Since New York law applies, New York conflict of law rules determine what State's privilege law applies here. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (in diversity cases, the substantive law of the state applies, including the state conflict of laws principles). Generally, New York courts apply the law of the place where the evidence in question will be introduced at trial, or the location of the discovery proceeding itself. *See Drimmer v. Appleton*, 628 F.Supp. 1249, 1250 (S.D.N.Y. 1986) (no conflict issue where trial and deposition in same state); *Brandman v. Cross & Brown Co. of Florida, Inc.*, 125 Misc.2d 185, 479 N.Y.S.2d 435, 437 (N.Y.Sup.Ct.1984) (applying center of gravity test to attorney-client privilege choice of law question). Here the evidence will be introduced in New York, and neither party has argued that non-New York law should apply because the discovery proceeding would take place elsewhere. Therefore, New York privilege law shall apply.

#### B. Motion to Compel Will Be Granted In Part and Denied In Part

The nub of matter here is whether the defendant's pursuit of a champerty defense justifies limiting the attorney-client privilege to permit questions regarding the elements of legal advice rendered by Straus, or whether questions should be limited to the dates and the broad subject matter of the services rendered.

The attorney-client privilege is codified in New York Civil Practice Laws and Rules 4503, which states: "Unless the client waives the privilege, an attorney . . . who obtains . . . a confidential communication . . . made between the attorney . . . and the client in the course of professional employment shall not disclose, or be allowed to disclose such communication, in any action." N.Y. C.P.L.R. 4503(a) (McKinney 1992). The purpose is to "encourage persons needing professional advice to disclose freely the facts in reference to which they seek advice, without fear that such facts will be made public to their disgrace or detriment by their attorney." *Hurlburt v. Hurlburt*, 128 N.Y. 420,

424, 28 N.E. 651 (1891); *Matter of Jacqueline F.*, 47 N.Y.2d 215, 218, 417 N.Y.S.2d 884, 391 N.E.2d 967 (1979) (privilege established to effectuate "a more orderly administration of justice through frank revelation of pertinent information"). The privilege is not absolute, and may yield in an appropriate case. *Priest v. Hennessy*, 51 N.Y.2d 62, 68–69, 431 N.Y.S.2d 511, 409 N.E.2d 983 (N.Y.1980) (attorney-client privilege may yield to strong public policy interests); *Jacqueline F.*, 47 N.Y.2d at 218–19, 417 N.Y.S.2d 884, 391 N.E.2d 967 (attorney-client privilege "constitutes an 'obstacle' to the truth-finding process, the invocation of which should be cautiously observed to ensure that its application is consistent with its purpose"). Moreover, the party asserting the privilege has the burden of establishing all the essential elements. *See Spectrum Sys. Int'l Corp. v. Chemical Bank*, 78 N.Y.2d 371, 377, 575 N.Y.S.2d 809, 581 N.E.2d 1055 (1991).

Peru claims that the attorney-client privilege extends to the advice rendered and not to factual information regarding the general subject matter. Even if this were so, however, such a formulation is of limited use in deciding specific cases. As Straus correctly points out, the line between general subject matter and specific details is not easily drawn, and it seems correct to assert that "general" questions may be pieced together to gain more specific knowledge about the legal advice sought or rendered. *See GPA Inc. v. Liggett Group Inc.*, 94 Civ. 5735, 1995 WL 331796 (S.D.N.Y. June 5, 1995) (denying motion to compel answers to question of whether and when a party to the action showed a letter to his attorney since it was more than subject matter, would unavoidably disclose indirectly some of the details of privileged conversations, was not necessary to test the validity of the asserted privilege, and did not fall within crime-fraud exception).

Deeper probing is permitted in certain contexts. For example, courts permit questions necessary to test the factual grounding of an asserted attorney-client privilege. For example, it may be necessary to establish the character of the relationship since a business agent relationship, rather than an attorney-client relationship, would not give rise to a privilege. *See Spectrum Sys.*, 78 N.Y.2d at 379, 575 N.Y.S.2d 809, 581 N.E.2d 1055 ("[L]awyers communication is not cloaked with privilege when the lawyer is hired for business or personal advice."). In *Colton v. United States*, 306 F.2d 633, 635 (2d Cir. 1962), cited by Peru, the court permitted inquiry into the general subject matter of attorney-client communications to establish which advice, if any, was non-privileged business advice. *Id.* at 638.[1] To probe this issue, the *Colton* Court permitted inquiry into the general subject matter at a sufficiently abstract level so as to not reveal the substance of the advice. Accordingly, the court permitted inquiry into whether the services involved "litigation," "drafting of documents," and "tax advice." *Id.* at 636. *See also J.P. Foley & Co., Inc. v. Vanderbilt*, 65 F.R.D. 523, 527 (S.D.N.Y.1974) (in federal privilege law context, attorney "must first reveal specific facts which would tend to establish that the [ ] relationship was one of attorney and client").

Furthermore, attorney invoices have been subject to disclosure. In *Orange County Publications, Inc. v. County of Orange*, 168 Misc.2d 346, 637 N.Y.S.2d 596 (N.Y.Sup.Ct. 1995), the court permitted discovery of attorney bills. The court held that the content of the particular billing statements was collateral to the services rendered, and therefore were more like fee arrangements, which generally is permissible discovery, than like detailed statements "showing services, conversations, and conferences" which are protected. Id. 637 N.Y.S.2d at 602. *See also Eisic Trading Corp. v. Somerset Marine, Inc.*, 212 A.D.2d 451, 622 N.Y.S.2d 728, 729 (1st Dep't 1995) (fee statements not privileged since they did not contain detailed accounts of legal services rendered). However, attorney invoices revealing the details of the services rendered are protected. *See Licensing Corp. of Am. v. National Hockey League Players Ass' n*, 153 Misc.2d 126, 580 N.Y.S.2d 128, 130 (N.Y.Sup.Ct.1992) (holding, pursuant to CPLR 4503, attorney bills

---

**1.** Although federal common law governed the privilege issues in *Colton*, which involved a federal tax matter, and therefore is not binding in this case, the decision is nevertheless instructive.

that were detailed diaries showing services, conversations, and conferences were privileged since, "[a]lthough the documents themselves do not provide legal advice to [the client], disclosure would reveal certain privileged communications"); *see also Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,* 93 Civ. 6876, 1995 WL 598971, *2 (S.D.N.Y. Oct. 11, 1995) (denying motion to compel production of billing documents where they "would tend to reveal the precise nature of representation that [attorney] rendered"); *Riddell Sports Inc. v. Brooks,* 158 F.R.D. 555, 560 (S.D.N.Y.1994) (observing that while "attorney fee arrangements, including the general purpose of the work performed, are not generally protected ... [documents] which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of services provided, such as researching particular areas of law, fall within the privilege").

As this Court has said, establishing Elliott's intent in purchasing the debt is essential to the success of Peru's champerty defense. *Elliott,* 961 F.Supp. at 88. Accordingly, Peru has vigorously pursued evidence regarding Elliott's intent leading up to, and concluding with, closing the assignment of the debt. Knowledge of the details of conversations between Elliott and their attorney Straus would benefit Peru's objective of knowing what Elliott's intent was at the time they decided to purchase the debt.

Peru's request does not come within any exception to the attorney-client privilege that might permit specific questions. Specifically, Peru has not argued that Straus was acting as a business advisor, rather than as an attorney. In the absence of such an argument, their request does not fall within the exception permitted for probing the validity of the privilege.

Therefore, inquiry will be narrowly limited to the date Straus first discussed with Elliott the purchase of Peruvian debt, the assignment agreements and the status of Elliott as a financial institution. Questions probing more specific elements of Straus' conversations, such as the subject matter of advice sought by Andrew Kurtz, an analyst at Elliott, shall not be permitted.

## II. *Address and Telephone Number of Gerstel and Veilleux is Privileged*

■ Peru seeks to compel Straus to provide the address and telephone numbers of Raphael Gerstel and Christian Veilleux, both of whom are clients Straus represented in other sovereign debt collection lawsuits. Gerstel is the managing director of Weston Compagnie de Finance et D'Investissememnt, S.A. ("Weston"). According to Straus, he represented Weston in a lawsuit against Ecuador and still provides the company with legal advice. Christian Veilleux is the president and director of Water Street Bank and Trust Limited ("Water Street"). According to Straus, he represented Water Street in its lawsuit against Panama.

■ As a general matter, communication between a lawyer and client, including disclosure of the client's address, is privileged because it serves the policy of frank revelation by the client to the attorney. *See In re Kaplan,* 8 N.Y.2d 214, 219, 203 N.Y.S.2d 836, 168 N.E.2d 660 (1960) (general rule is client's identity is confidential, and holding that no exception applies here where client has legitimate fear or reprisal); *Potamkin Cadillac Corp. v. Karmgard,* 100 Misc.2d 627, 420 N.Y.S.2d 104, 106 (N.Y.City Civ.Ct.1979) (Uviller, J.); *see also Matter of Grand Jury Subpoenas Served Upon Field,* 408 F.Supp. 1169 (S.D.N.Y.1976) (applying federal law and holding that law firm client's address sought to find potential grand jury witness is privileged where "address is communicated for the specific purpose of receiving legal advice and the address itself is at the heart of the advice sought").

■ There are exceptions to this general rule. Disclosure of a client's identity may be required if it is necessary to establish the attorney-client relationship. *People ex rel. Vogelstein v. Warden,* 150 Misc. 714, 270 N.Y.S. 362, 367 (N.Y.Sup.Ct.), *aff'd,* 242 A.D. 611, 271 N.Y.S. 1059 (1st Dep't 1934). Furthermore, courts have observed that in certain cases a client's address may be disclosed 'in the interest of justice, to protect the rights of the adverse party to the action.' *See Jacqueline F.,* at 47 N.Y.2d at 220, 417

N.Y.S.2d 884, 391 N.E.2d 967 (observing that disclosure may be justified by proper administration of justice); *In re Trainer*, 146 A.D. 117, 130 N.Y.S. 682 (1st Dep't 1911).

 The grounds for exempting a client's identity or location from the scope of the attorney-client privilege rarely apply where, as here, the client is a non-party. *See Jacqueline F.*, 47 N.Y.2d at 220, 417 N.Y.S.2d 884, 391 N.E.2d 967 (observing that "absent other circumstances, an attorney cannot be compelled to reveal a client's identity where the latter is not a party to a pending litigation"); *Hyman v. Corgil Realty Co.*, 164 A.D. 140, 149 N.Y.S. 493, 493 (1st Dep't 1914) ("The power of a court to compel an attorney to disclose the address of his client is confined to the proceeding or case in which the attorney appears for his client."); *Trainer*, 130 N.Y.S. at 684 (denying access to client's address since, *inter alia*, she is not a party); *Potamkin*, 420 N.Y.S.2d at 108–09 (holding that judgment creditor's interest in obtaining debtor's address from attorney who represented debtor on a different matter does not outweigh policy interests of attorney-client privilege).

The New York Court of Appeals, in *Jacqueline F.*, permitted inquiry into the address of a client who had fled to Puerto Rico with a child who was the subject of a custody dispute. While the client was not the subject of present litigation, the court held that the attorney-client privilege must yield to the best interests of the child in the limited case where "the welfare of a young child caught in an intrafamilial legal battle in which the victor stands to gain ... custody of the child." *Jacqueline F.*, 47 N.Y.2d at 222–23, 417 N.Y.S.2d 884, 391 N.E.2d 967.

To paraphrase Judge Uviller in *Potamkin*, here, Peru does not seek to locate its children. Rather, Peru seeks an expeditious method to locate potential witnesses who may testify about Straus' past conduct in suing foreign sovereigns to collect debts. Straus claims that he obtained the address and telephone number of Gerstel and Villeux by virtue of his representation of those parties as their attorney. In the absence of a substantial need to obtain this information from Straus, such as was shown in *Jacque-*line F., the privilege does apply and the motion to compel will be denied.

**Conclusion**

For the reasons set forth above, Peru's motion to compel will be granted in part and denied in part.

It is so ordered.